UNITED STATES, Appellee

v

WALTER A. BURROW, Specialist Five,
U. S. Army, Appellant

16 USCMA 94, 36 CMR 250

No. 18,855

March 11, 1966

Captain *Francis R. Jones* argued the cause for Appellant, Accused. With him on the brief were Colonel *Joseph L. Chalk* and Lieutenant Colonel *Martin S. Drucker.*

Captain *Michael E. Phenner* argued the cause for Appellee, United States. With him on the brief were Colonel *Joseph J. Crimmins,* Lieutenant Colonel *Francis M. Cooper,* and Captain *Samuel D. Engle, Jr.*

## Opinion of the Court

KILDAY, Judge:

Accused was tried by general court-martial on charges of larceny, housebreaking, and bribery, in violation of Articles 121, 130 and 134, Uniform Code of Military Justice, 10 USC §§ 921, 930 and 934, respectively. He pleaded not guilty, but was convicted as charged and sentenced to a dishonorable discharge and confinement at hard labor for two years. The convening authority approved and a board of review in the office of The Judge Advocate General of the Army affirmed the findings and sentence.

Thereafter, accused petitioned this Court for grant of review, and we set his case for hearing in order to consider arguments on the following two issues relating to the same evidentiary matter:

"1. Whether the Article 32 testimony (Exhibits 2 and 3) of Penichot and Deluen was admissible as former testimony.

"2. Assuming the answer to the first issue is in the affirmative, then does the record sufficiently show that the said witnesses refused to appear and testify?"

An explanation of the circumstances of the offenses will serve to place the questions in perspective. The evidence of record shows that a forced entry was discovered at the European Exchange located on the Gron military installation at St. Nazaire, France. An inventory disclosed a shortage of several cases of cigarettes. One Private Suggs testified that, between the hours of approximately midnight until 7:30 of the morning the shortage was discovered, he was on gate duty at the only legitimate entrance to the installation during those hours. While he was on duty, Suggs stated accused drove his automobile on the installation and conversed with him briefly at that time. Accused had an Algerian passenger with him in his car. Sometime later, around 2:00 or 3:00 a.m., accused drove back out through the gate, and Suggs claimed something was said to him "about fifty" at that time. Later in the morning, according to Suggs, accused came to his billet and awakened him. He told Suggs he was glad he had been on duty the night before and that he could not tell him what was happening, but that Suggs should "keep your ears open." Accused gave Suggs $100.00 in French currency, and said " 'If anyone asks if you seen [sic] me last night, just say no.' "

Also admitted into evidence without objection by the defense was a pretrial statement executed by accused. In it he denied participation in the housebreaking or the larceny. However, he admitted he had driven to the camp on the night in question, and that when he entered around 10:45 p.m. there was an Algerian with him in his car. Accused asserted he had gone to the camp to purchase cigarettes, and claimed Suggs was not on duty when he entered. The Algerian was left at his car, accused said, while he went to the enlisted men's club, the bowling alley, and the noncommissioned officers' barracks. When he returned to his auto, according to accused, there were several cases in the rear of his vehicle. He made inquiry as to them of the Algerian but got no reply. When accused left the installation, he noticed that Suggs was on duty at the gate. He drove outside the camp and, at the direction of the Algerian, accused stated he made several stops. The cases, which accused noticed were cigarettes, were unloaded, but accused claimed to have witnessed no exchange of money and denied he ever received anything by reason of the transactions. After dropping the Algerian off, accused stated he arrived at his quarters about 1:30 a.m.

At trial, accused's testimony under oath on the merits was substantially in accordance with his pretrial statement. He added, in explanation of his failure to report the incident, that he was scheduled for imminent rotation back to the United States, and he was reluctant to become involved in anything which would delay his departure from France. Accused flatly denied he had conversed with Suggs the morning after the theft, or that he had offered Suggs a bribe or given him any money.

Finally, there was introduced into evidence against accused, over objection by the defense, verbatim statements by two French nationals who had testified under oath at the Article 32 investigation. The gist of that evidence is that they had each purchased about a case of cigarettes from accused on the day or the day after the theft, for French currency of a total value of some $250.00. It is the evidence given by the two French nationals to which the granted issues pertain.

It must immediately be conceded that neither the Code nor the Manual are directly in point under the circumstances with which we are here involved. As the board of review pointed out in its opinion, neither source makes specific reference to the use of reported testimony secured during the course of an Article 32 investigation. Cf. Articles 49(d) and 50(a), Uniform Code of Military Justice, 10 USC §§ 849 and 850; and paragraph 145b, Manual for Courts-Martial, United States, 1951. The question is not new, however, and need be of no concern to us here. It was before this Court squarely as long ago as United States v Eggers, 3 USCMA 191, 11 CMR 191. In that case, a unanimous Court considered the previously cited provisions and other authorities, and held that the verbatim testimony of a witness, taken at an Article 32 pretrial hearing at which the accused was represented by counsel and had the opportunity to cross-examine, could be used at the court-martial trial of the accused when the witness was unavailable to appear and testify in person. See also United States v Tomaszewski, 8 USCMA 266, 269, 24 CMR 76.

Appellate defense counsel frankly recognize the above holding, but urge us to reconsider and overrule the *Eggers* decision. While they do not contend verbatim testimony from a previous trial of the same accused should be excluded, they question the current applicability of the authorities upon which this Court relied in reaching its decision as to Article 32 testimony, particularly in light of the recent decision by the United States Supreme Court in Pointer v Texas, 380 US 400, 13 L ed 2d 923, 85 S Ct 1065 (1965).

We are not persuaded to discard the reasoning of *Eggers,* and overrule it, as

appellate defense counsel importune us to do. Indeed, in our judgment, the *Pointer* case supports our position. There the Supreme Court simply considered the applicability of the Sixth Amendment's "guarantee of a defendant's right 'to be confronted with the witnesses against him,' which has been held to include the right to cross-examine those witnesses," to the States under the Fourteenth Amendment to the Constitution. Pointer v Texas, supra, at page 401. The Court applied the same standard in this State prosecution. It reversed because there was introduced against the defendant at his trial, over objection, the testimony given by the victim at a preliminary hearing[1] at which Pointer was not represented by counsel. Such prior testimony, the Court held, was inadmissible because the use thereof "denied petitioner any opportunity to have the benefit of counsel's cross-examination of the principal witness against him." *Id.* at page 403. Interestingly, the Supreme Court cited, in support of its decision, the same authorities upon which we relied in *Eggers,* supra. And, indeed, after noting that the major reason underlying the constitutional confrontation rule was to give a defendant charged with crime an *opportunity* to cross-examine the witnesses against him, Justice Black went on to point out in his opinion for the Court, that:

". . . The case before us would be quite a different one had Phillips' statement been taken at a full-fledged hearing at which petitioner had been represented by counsel who had been given a complete and adequate opportunity to cross-examine." [Pointer v Texas, supra, at page 407.]

See also Douglas v Alabama, 380 US 415, 13 L ed 2d 934, 85 S Ct 1074 (1965); West v Louisiana, 194 US 258, 48 L ed 965, 24 S Ct 650 (1904). Accordingly, we reaffirm our holdings relative to the use of Article 32 testimony at subsequent trials.

In the case at bar, the parties and

[1] The victim had moved from the jurisdiction before the time of trial, and was shown not to intend to return.

the charges involved in the pretrial investigation were the same as those in accused's court-martial. At the pretrial investigation, accused was represented by a qualified attorney, the same lawyer who defended him at trial. The two witnesses Penichot and Deluen—whose sworn transcribed Article 32 testimony is the seat of our problem here—were both French nationals and admittedly not amenable to subpoena by United States authorities. Manifestly, therefore, assuming a proper showing made in support thereof, the Article 32 testimony of the two Frenchmen would be admissible at accused's court-martial trial as former testimony. United States v Eggers; United States v Tomaszewski; Articles 49(d) and 50 (a) of the Code; and paragraph 145*b* of the Manual, all supra. We turn our attention, accordingly, to the foundation laid at trial in support of admissibility, and the objections thereto raised by the defense.

Before presenting that evidence, trial counsel had requested a hearing out of the presence of the court members. Thereat, he stated his intent to offer the statements of the two French witnesses as follows:

"At this time, I intend to offer . . . as prior testimony; verbatim statements taken at the Article 32 Investigation involved in this matter. There are two French witnesses who are not amenable to process, and I can assure you I have made efforts in all good faith to try to get them to attend, but have met with no success in that regard. Their statements were taken in the presence of the accused and his counsel, who had the opportunity to cross-examine, at the Article 32 Investigation."

Relying on United States v Eggers, and United States v Tomaszewski, supra, trial counsel sought a ruling that the statements were admissible as former testimony, although it was conceded that the witnesses were at St. Nazaire, only about one mile removed from the place of trial.

Defense counsel, at trial, initially

interposed an objection on the grounds that:

"... in the Eggers Case the witness had died; obviously unavailable. Here, they are in town. While they cannot be subpoenaed, frequently they request the Gendarmerie—it has a great effect on these people. I do not believe this request was made."

Subsequently, counsel for accused shifted his ground and objected to the statements on the basis that the interpreter used for the testimony of these two French witnesses at the Article 32 hearing, was never sworn. Finally, there was discussion of the fact that in the *Eggers* case, there had been searching cross-examination, whereas, in the present instance, there was only one question put to Penichot on cross-examination, and none to Deluen.[2]

With regard to the initial matter, the defense candidly conceded that the French witnesses were not subject to court-martial process, and that they could not be required to testify under any agreement between the two countries. Nor did defense counsel dispute trial counsel's representation that the two men refused to appear. The sole question he raised in that regard was that the Gendarmes might have assisted in convincing the Frenchmen to testify at trial. The law officer pointed out that this might involve coercion, but even on that score defense counsel admitted the witnesses' appearance could not be legally compelled by the Gendarmes.

Accordingly, the defense shifted the emphasis of its objection to the alleged failure to swear the interpreter. As to that matter, although the evidence was in dispute, the transcribed statements themselves indicate the interpreter was sworn and, further, the law officer heard testimony from the investigating officer that he specifically recalled administering the oath to the interpreter and was certain she was sworn.

Relative to the matter of cross-examination, as we have previously noted, the questions put to the French witnesses on direct were few, and the sum total of their testimony is such that, as was pointed out during the colloquy in this area, it appears there was little that could have been elicited by a searching cross-examination. There is no question that the defense was afforded the fullest opportunity for cross-examination of these witnesses at the Article 32 hearing, and defense counsel—who also represented accused at the investigation—tacitly acceded to trial counsel's suggestion that, for reasons of his own, he had elected not to cross-examine at length.

Appellate defense counsel here repeat the attack on the sufficiency of the showing that the French witnesses refused to appear and testify at accused's trial. In that connection they invite our attention to the provisions of a French Ministry of Justice circular, in implementation of the NATO Status of Forces Agreement; and to the provisions of Regulation 22–5, Headquarters, United States Army, Europe. Said provisions indicate that foreign authorities will cooperate, in attempting to persuade French nationals to appear and testify. Additionally, reliance is placed on United States v Stringer, 5 USCMA 122, 17 CMR 122.

Unlike United States v Stringer, supra, however, we do not have here a situation where "no single shred of information" indicates the unavailability of the witnesses. To the contrary, as we have previously noted, it is conceded the two men were not compellable, and trial counsel averred that his good faith endeavors to obtain their attendance were rejected. This showing, it is to be borne in mind, was made in an out-of-court hearing on the interlocutory question of the admissibility of the evidence. The rules of evidence in such a situation may be, of course, considerably relaxed, and in the instant situation, as the board of review pointed out, trial

[2] It is noted that only nine questions were asked of one witness on direct examination and, as to the other, but four.

counsel—although he was not under oath—made his statement regarding unavailability as an officer of the court. Rather than controverting trial counsel's representation at trial—where such matters should properly be litigated and resolved, see United States v Mitchell, 15 USCMA 516, 36 CMR 14—the defense, when asked by the law officer whether there was anything else it desired to offer in support of its contentions on this matter, dropped the question of unavailability and went on to pursue its main contention that the interpreter was not sworn.

In light of the circumstances, we conclude the law officer did not err in accepting the showing relative to the unavailability of the two Frenchmen. See United States v Stringer, supra, and United States v Ciarletta, 7 USCMA 606, 23 CMR 70.

Likewise, we must reject the attack which appellate defense counsel continue, at this level, as to the swearing of the interpreter. As we have noted hereinbefore, there was substantial basis upon which the law officer might determine that the translator was indeed sworn despite the contrary evidence that she was not. Manifestly, the law officer did not abuse his discretion in his ruling on this interlocutory question. See Article 51(b), Uniform Code of Military Justice, 10 USC § 851; United States v Stewart, 1 USCMA 648, 5 CMR 76.

Similarly, we find no basis in the complaint, registered for the first time before the board of review, that, since the witnesses themselves were unavailable, the interpreter should have been called as a witness, or shown to be unavailable, before their Article 32 testimony was admitted. See Manual for Courts-Martial, United States, 1951, paragraph 141. The short answer, as the board of review stated, is that no such objection was raised at trial. The defense made no claim that the interpreter was incompetent, and there was no assertion that her translation is inaccurate or

incorrect. Neither was there any quarrel with the investigating officer's identification of the transcripts of testimony given by the Frenchmen at the Article 32 hearing. Under those circumstances this objection cannot now be sustained. See United States v Vanderpool, 4 USCMA 561, 570, 16 CMR 135.

Finally, we consider the matter of cross-examination. Appellate defense counsel do not deny there was unrestricted opportunity for cross-examination of the two Frenchmen at the pretrial investigation. They argue, however, that the interest and motive for cross-examination at the Article 32 level are not the same as those at trial; that the defense may, at the pretrial investigation, have various good reasons to restrict its cross-examination and avoid areas it would want to probe at trial. Here the defense elected so to restrict its cross-examination at the pretrial hearing and, it is argued, with valid basis. Thus, the contention is, in short, that there must be not only the opportunity to cross-examine fully, but, as well, a compelling incentive or reason to utilize the same; otherwise the accused is not truly afforded his right to "confrontation."

This approach, also, will afford accused no comfort. It was fully explored by the Court in the *Eggers* opinion, supra, and rejected in the following language:

"There is, indeed, something to be said for the argument—but not enough, we believe. . . . It is doubtless true—as has been said—that cross-examination is 'the greatest legal engine ever invented for the discovery of truth.' At the same time cross-examination is nowhere *required*, but only the *opportunity* for its exercise. If, in pursuit of some real or fancied strategical advantage of his own, counsel sifts direct examination inadequately at a preliminary stage of the proceedings, he should not be heard to complain when, in a proper case, it confronts him later at the trial." [United

States v Eggers, supra, at pages 193–94.]

And although we there declined, as unnecessary to the decision, to express an absolute view as to instances where pretrial testimony was less thoroughly sifted than was the case in *Eggers,* or not at all, the recent decision by the Supreme Court in *Pointer,* supra, renders it clear that the *opportunity* to cross-examine, rather than the exercise thereof, is the critical factor. See, in addition to the previous quotation herein from Pointer v Texas, supra, Mr. Justice Stewart's separate concurrence therein at page 409.

For those reasons, in addition to the other factors mentioned earlier in this opinion, we hold that the law officer did not err in rejecting any attack on the admissibility of the Article 32 testimony by reason of limited cross-examination.

In light of the foregoing discussion, we conclude the Article 32 testimony of the two French nationals was admissible in the case at bar as former testimony. The two granted issues are determined adversely to accused, and the decision of the board of review, accordingly, is affirmed.

Judge FERGUSON concurs.

QUINN, Chief Judge (concurring):

With our armed forces serving in many foreign countries, it is, in my opinion, not enough to say merely that the Article 32 testimony of a civilian witness is admissible at the trial because he is not amenable to process to compel him to appear at the trial. The argument is especially hollow if the circumstances which led to the witness' appearance at the Article 32 remain unchanged at the time of trial. I would, therefore, require, and we have in fact held, that the party offering the Article 32 testimony establish that the circumstances in the interim between the investigation and the trial have changed and all available means, compulsory or *voluntary,* for obtaining the presence of the witness were tried and proved fruitless. United States v Stringer, 5 USCMA 122, 17 CMR 122.

In a situation such as this, where the United States has a Status of Forces Agreement with the host nation, I would, at the very least, require a positive showing that the moving party applied to the appropriate authorities of the host nation for assistance in securing the attendance of the witness, and that the cooperation provided for by the Agreement was either denied, or proved unsuccessful in inducing the witness to appear voluntarily.

Even tested by my standards, however, the law officer had sufficient evidence before him from which to fairly conclude that the witness was unavailable, within the meaning of Article 49, Uniform Code of Military Justice, 10 USC § 849. Accordingly, I join in the affirmance of the decision of the board of review.