UNITED STATES, Appellee

v

RONALD WHEELER, Private, U. S. Army, Appellant

21 USCMA 468, 45 CMR 242

No. 24,594

June 30, 1972

*Stanley Faulkner, Esquire,* and *Captain Gordon W. Hatheway, Jr.,* argued the cause for Appellant, Accused.

*Captain James T. Harper* argued the cause for Appellee, United States. With him on the brief was *Lieutenant Colonel Ronald H. Holdaway.*

## Opinion of the Court

DUNCAN, Judge:

The following issues were granted for review:

I. Whether the appellant was denied the right to cross-examine the witness against him.

II. Whether the appellant has been denied a speedy trial as provided by Articles 10 and 33, Uniform Code of Military Justice, and the Sixth Amendment.

III. Whether the scope of the warrantless search was without the limits of the Fourth Amendment as construed by the Supreme Court.

IV. Whether the appellant was denied due process of law by the inordinate delay in the administrative processing of his case.

We affirm the decision of the Court of Military Review.

Private Wheeler was convicted for the offenses of larceny of two television sets, a tape-record-radio console, housebreaking, and possession of marihuana. Other offenses charged against the appellant—communicating a threat, larceny of a radio, larceny of a stereo and electric heater, housebreaking (one specification), sale of Government property, and larceny of a wallet were dismissed by the convening authority after arraignment. Additionally, in accordance with his pleas, he was found not guilty of larceny of a television, one specification of housebreaking, and one specification of larceny of a wallet.

He was sentenced to a bad-conduct discharge, to forfeit all pay and allowances, and to be confined at hard labor for two years. The Court of Military Review affirmed the findings and sentence.

I

Prior to trial at the Article 32 investigation attended by the appellant, defense counsel, and trial counsel, Private Rush gave pretrial testimony severely damaging to the appellant's interest and valuable to the Government's case. At the Article 32 hearing Rush stated, in part:

". . . Wheeler broke into his [Jenkins'] room and we got the stereo set, brought it downstairs, put it in the car and took to Cookstown and sold it.

. . . . .

"Myself and another fellow broke into his [Gustason's] room. The room was open and we walked in his room. . . . We took the TV out. Wheeler had his car around the side, so Ball came outside and held my end of the TV and I ran over to Wheeler's car. He backed the car up, we put the TV in the car in the middle of the back seat."

Rush also stated that the television set was sold to an elderly man in Cookstown, that he observed Wheeler take a wallet from one Dugas' pants and count the money it contained, and that appellant kept marihuana in his (appellant's) car.

An examination of Rush's Article 32 testimony reveals that defense counsel on cross-examination posed a number of questions to Rush. Appellate defense counsel do not deny that at the Article 32 hearing the opportunity for cross-examination was afforded, but now complain that "the defense counsel did not fully press the principal witness on facts directly related to his credibility." They contend that only subsequent to the hearing did trial defense counsel discover that on March 29, 1969, Rush had been convicted of larceny in a civilian court which evidence, they assert, would negate his credibility.

Sometime after the Article 32 hearing, Rush was discharged from military service. In order to direct Rush to appear, trial counsel issued a subpoena to the United States Marshal for the United States District Court for the Eastern District of New York. A Deputy United States Marshal's return of process, dated December 2, 1969, stated that after diligent search he was unable to find Rush in the district. The deputy marshal's return also states "son left home sometime in October has not been seen or heard from since as per mother and father." Prior to that return, the deputy marshal made a similar return of process dated November 4, 1969.[1]

---

[1] In a letter dated October 28, 1969, trial counsel requested the United States Marshal to make service of process on Rush. The return of that process is date November 4, 1969, and states that he could not find Rush in the district and also sets forth, "Subject left home early part of this week after receiving phone call from Fort Dix re Sub. has not been home since, as per father."

The record also contains trial counsel's statement that on January 14, 1970, he called Rush's home and was informed by his mother that he told his family that he was not going to testify. Rush's mother also said that " 'at last known he was somewhere in the Caribbean.' "

The verbatim testimony of a witness taken at an Article 32 investigation at which the accused was █ represented by counsel who had an opportunity to cross-examine can be used at trial if that witness becomes unavailable at time of trial. See United States v Eggers, 3 USCMA 191, 11 CMR 191 (1953); United States v Burrow, 16 USCMA 94, 36 CMR 250 (1966); paragraph 145b, Manual for Courts-Martial, United States, 1969 (Revised edition). The admissibility of such testimony is clear under the above qualifying circumstance without regard to whether or not defense counsel at the Article 32 hearing could foresee its later use at trial. Moreover, we see nothing in our decision in United States v Obligacion, 17 USCMA 36, 37 CMR 300 (1967), inapposite to the view of the law we express herein.

In the case at bar, are there sufficient facts of record which support the military judge's ruling that the Government had shown that using reasonable diligence Rush could not be located for service of a subpoena?

Appellate defense counsel urge a rule that an important witness, such as Rush, should have been █ held in the service until he █ testified in this case. We know of no procedure by which this could be accomplished. When a reasonable effort for compelling the attendance of a civilian witness has been made while employing the procedures as set forth in paragraph 115d, Manual, supra, and the witness cannot be found and in the absence of facts showing a lack of diligence in using such procedures, we believe the Government has sustained its burden in showing unavailability. In the case at bar the Government sufficiently proved Rush's unavailability.

## II

Wheeler was apprehended and confined on April 21, 1969. On April 24, 1969, the original charges were prepared and the appellant was informed of the charges. Additional charges were preferred on May 20, 1969. The Article 32 investigating officer completed his report of investigation on June 25, 1969, and forwarded it to the convening authority on June 28, 1969. On September 2, 1969, the charges were referred to trial. On October 20, 1969, trial began. On that date a continuance was granted for the return of witnesses from overseas stations. The trial was adjourned until November 5, but reconvened on January 15, 1970, a date which the military judge stated was selected by necessity because of the trial schedule at Fort Dix and the schedule of individual defense counsel.

Being aware of the requirements of Articles 10 and 33, Uniform Code of Military Justice, 10 USC §§ 810 and 833, and after a review of the record, we find a sufficient showing by the Government that it has proceeded in an orderly expeditious fashion satisfactorily to comply with those codal requirements. See United States v Przybycien, 19 USCMA 120, 41 CMR 120 (1969).

The criminal acts the appellant was alleged to have committed occurred on a number of different █ dates, at various places, and concerned a number of different persons. Therefore, the initial investigation of the charges, preparation of charges, the Article 32 investigation, the pretrial advice were all quite involved and time-consuming. The Government also attributes some delay because of the vast volume of court-related work and shortage of persons to do it at Fort Dix. Although those problems alone are not always a satisfactory explanation for delay, they are to be considered along with the other evidence.

Our review of the record leads us to the conclusion that under these circumstances the appellant was not un-

lawfully denied codal or constitutional rights to an expeditious trial.

## III

The Fourth Amendment question presented by the third issue under review requires an answer to the threshold question of whether there was probable cause for the apprehension of Wheeler on the night of April 21, 1969. For several weeks before the accused was apprehended, investigators at Fort Dix had been investigating a number of instances where various articles had been stolen. After Chief Warrant Officer Blocker entered the case, about mid-April 1969, a Private First Class Ball told him that he (Ball) and Wheeler had "taken" a television set.

In an interview with Blocker on April 21, 1969, Rush stated that he and Wheeler took a stereo belonging to Sergeant Jenkins. Rush also stated that he was involved with Wheeler in the theft of Sergeant Gustason's television. Rush said that they smoked marihuana and that there was a hole in Wheeler's car by the driver's seat where they usually "stashed their bags." Rush also told Blocker that Wheeler's 1961 blue Ford called the " 'Blue Goose' " was used to transport the items they carried away. Moreover, Rush told Blocker where the stolen television set had been taken and sold by Wheeler.

On April 21, 1969, Rush accompanied Blocker, another military investigator, and two agents of the Federal Bureau of Investigation to Cookstown, New Jersey, where a color television set was recovered from a Mr. Currington. The appliance had been stolen from Sergeant Gustason and sold to Currington. At Rush's direction the investigators went to the home of a Mr. Justice and recovered a stereo, the property of Sergeant Jenkins.

Mr. Currington described the person from whom he purchased the television as being about five feet nine inches tall and weighing 140 pounds.[2] Mr. Justice

[2] A partial description which fit appellant.

472

identified Wheeler from a photograph as the person from whom he purchased the stereo.

At about 6:30 p.m. on that day (April 21), Blocker returned to the Criminal Investigations Detachment (CID) office and decided to go out and look for Wheeler and another person allegedly involved. Sometime between 8:00 and 9:00 p.m., agents in another car observed the Wheeler car. Blocker was notified of this by radio. He then told the agents to follow the car but soon changed his mind and told the agents to apprehend the men in the blue Ford.

When the agents stopped the car, Wheeler and Simmons (a passenger) were apprehended, taken out of the car, and searched for weapons. Shortly thereafter Blocker arrived in another vehicle and proceeded to search the blue Ford. At trial he stated he was looking for housebreaking tools, marihuana, and stolen property. Upon the initial search he found two pipes in the glove compartment and emptied the contents of the ashtrays. He also found some small envelopes. The Government's scientific evidence indicated the presence of marihuana in these items. Thereafter, Blocker had the car removed to the Provost Marshal's office, assigning as a reason for the move a belief that the presence of the cars in the location of the apprehension amounted to a traffic hazard. The approximate one-mile trip took about ten minutes. After the car was moved, the search continued and about 25 minutes later, a picture was found in the trunk. The picture was of the children of Sergeant Jenkins, the person from whose possession the stereo set had been removed. Testimony revealed that the picture usually sat on the Jenkins' stereo. Both the marihuana found in the search made at the place of apprehension and the picture found later were admitted in evidence.

The knowledge gained by Blocker from his experiences with Rush on April 21, 1969, more than adequately provided probable cause for the ap-

prehension of Wheeler. A prudent law enforcement officer advised of these facts could reasonably believe Wheeler had committed serious offenses. Certainly after Rush's information led to the recovery of stolen property, his other revelations cannot be said to be without reliability. Moreover, there was reasonable information that appellant's automobile was used in his criminal activity and that marihuana was usually kept in the car. The apprehension was lawful. Article 7, Code, supra, 10 USC § 807; paragraph 19a, Manual, supra.

In Williams v United States, 401 US 646, 28 L Ed 2d 388, 91 S Ct 1148 (1971), the Supreme Court ▮▮▮▮ held that their decision in Chimel v California, 395 US 752, 23 L Ed 2d 685, 89 S Ct 2034 (1969),[3] is not retroactive and should not be applied to searches conducted prior to the date of that decision. See United States v Bunch, 19 USCMA 309, 41 CMR 309 (1970). Since the search in the instant case predates the *Chimel* decision, there is no necessity of discussing the thrust of *Chimel* regarding the search of an automobile. The lawfulness of the search in the case at bar must be examined with a view toward the posture of the law of searches incidental to arrest as it was in the pre-*Chimel* era.[4] See paragraph 152, Manual, supra.

The warrantless search of the vehicle as incident to the arrest of appellant was not overbroad in scope because the appellant was outside the vehicle when the search was made. Cf. United States v Roth, 430 F2d 1137 (CA 2d Cir) (1970); United States v Free, 437 F2d 631 (CA DC Cir) (1970).

The highly transitory nature of the automobile demanded a rule for searches and seizures different from those traditionally applicable to homes. See Carroll v United States, 267 US 132, 69 L Ed 543, 45 S Ct 280 (1925); Chambers v Maroney, 399 US 42, 26 L Ed 2d 419, 90 S Ct 1975, reh den 400 US 856, 27 L Ed 2d 94, 91 S Ct 23 (1970). Appellant urges that the movement of his car from the place of apprehension to the Provost Marshal's office, a distance of approximately one mile where the search continued for at least 25 minutes, rendered that search remote from and not contemporaneous with the apprehension, therefore, unlawful.

Before discussing that contention it must be pointed out that this argument has no bearing on the seizure of the marihuana, only the picture mentioned hereinabove.

The evidence is unrebutted that the vehicle was removed as a matter of traffic safety. We do not ▮▮▮▮ believe that the movement of the car about one mile shortly after which the search resumed so dissipates the continuity of the search as to effectively render what was incidental to the apprehension thereafter divorced from direct incidence to the apprehension.

---

[3] In Chimel v California, supra, it was held that a search warrant must be obtained whenever reasonably practicable, and if not obtained the burden is on the prosecution to show impracticality. The decision further limited a warrantless search of a home incident to an arrest to "a search of the arrestee's person and the area 'within his immediate control'—construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence." 395 US, at page 763.

[4] "The right without a search warrant contemporaneously to search persons lawfully arrested . . . and to search the place where the arrest is made in order to find and seize things connected with the crime as its fruits, or as the means by which it was committed, as well as weapons and other things to effect an escape from custody, is not to be doubted." Agnello v United States, 269 US 20, 30, 70 L Ed 145, 46 S Ct 4, 5 (1925).

See also United States v Rabinowitz, 339 US 56, 94 L Ed 653, 70 S Ct 430 (1950), Harris v United States, 331 US 145, 91 L Ed 1399, 67 S Ct 1098 (1947), and United States v Ross, 13 USCMA 432, 32 CMR 432 (1963).

This conclusion is reached with knowledge of the law of the case, Preston v United States, 376 US 364, 11 L Ed 2d 777, 780, 84 S Ct 881 (1964), where the opinion states:

". . . Once an accused is under arrest and in custody, then a search made at another place, without a warrant, is simply not incident to the arrest."

The fact situation difference between *Preston* and the instant case is vast. Preston's arrest for vagrancy and the subsequent delayed search of the vehicle, in which he was seated when arrested, at a place distant from the arrest without a demonstrable relationship between the vagrancy charge and the general search of the vehicle that followed have caused the law of the case to be rather strictly confined to its peculiar facts. See Chambers v Maroney, supra, 399 US, at page 47; Cooper v California, 386 US 58, 17 L Ed 2d 730, 87 S Ct 788, reh and modif den 386 US 988, 18 L Ed 2d 243, 87 S Ct 243 (1967).

Independent of the right to search as an incident to the apprehension, was there probable cause to search Wheeler's vehicle at the time of apprehension? We think there was. Blocker had reliable information that marihuana was kept in the vehicle. In addition, on April 21, sometime after returning to his office after his trip to Cookstown, Rush telephoned the CID office. Rush stated that the appellant had threatened him. Because of this, it is a reasonable inference that Wheeler was well aware of the investigation. It was after receiving this call that the decision to search for Wheeler was made. Therefore, a search of the vehicle, if one were to be made, reasonably would have to be made *without a delay* which could provide an opportunity to remove any incriminating items from the vehicle.

Since we have reasoned that there was probable cause to search and seize at the scene of the apprehension, the decision in Chambers v Maroney, supra, makes the later seizure of the

474

picture reasonable. Mr. Justice White states:

". . . For constitutional purposes, we see no difference between on the one hand seizing and holding a car before presenting the probable cause issue to a magistrate and on the other hand carrying out an immediate search without a warrant. Given probable cause to search, either course is reasonable under the Fourth Amendment.

"On the facts before us, the blue station wagon could have been searched on the spot when it was stopped since there was probable cause to search and it was a fleeting target for a search. The probable-cause factor still obtained at the station house and so did the mobility of the car unless the Fourth Amendment permits a warrantless seizure of the car and the denial of its use to anyone until a warrant is secured. In that event there is little to choose in terms of practical consequences between an immediate search without a warrant and the car's immobilization until a warrant is obtained. The same consequences may not follow where there is unforeseeable cause to search a house." [399 US, at page 52.]

The picture was lawfully seized and admissible in evidence.

IV

We have commented on appellant's contention that unlawful pretrial delay demands dismissal of the charges of which he has been convicted. Turning to his contention that post-trial delay combined with pretrial delay abrogated his right and that a dismissal is indicated, again we disagree. Articles 10 and 33, Code, supra, and the Sixth Amendment concern pretrial delay. A coupling with alleged post-trial delay does not make unlawful that pretrial delay which we view as lawful.

The sentence in the instant case was announced on January 15, 1970; the record was authenticated June 5, 1970;

the staff judge advocate submitted his review on September 3, 1970; and the convening authority acted on the case on September 3, 1970. The record was received by the clerk of the United States Army Court of Military Review on October 26, 1970, and that court's decision is dated July 20, 1971.

The Government's administrative processing of this case after trial does not evidence a desirable standard of expeditiousness that we can commend. Nevertheless, in United States v Prater, 20 USCMA 339, 43 CMR 179 (1971), this Court held that unexplained appellate delays may demand a dismissal if prejudicial errors have occurred. See also United States v Davis, 20 USCMA 541, 43 CMR 381 (1971); United States v Tucker, 9 USCMA 587, 26 CMR 367 (1958); and United States v Ervin, 20 USCMA 97, 42 CMR 289 (1970). We have found no such prejudicial error in the case under review.

The decision of the Court of Military Review is affirmed.

Chief Judge DARDEN and Judge QUINN concur.