## UNITED STATES

### v.

### Sergeant Pablo R. MINAYA, FR 081–54–4723, United States Air Force.

### ACM 28126.

U.S. Air Force Court of Military Review.

Sentence Adjudged 29 July 1989.

Decided 13 June 1990.

Appellate Counsel for the Appellant: Colonel Richard F. O'Hair and Captain Darla G. Orndorff.

Appellate Counsel for the United States: Colonel Joe R. Lamport; Colonel Robert E. Giovagnoni; Major Paul H. Blackwell, Jr. and Major Terry M. Petrie.

Before BLOMMERS, KASTL and MURDOCK, Appellate Military Judges.

### DECISION

KASTL, Senior Judge:

Following his marriage to a Philippine national named Maria, the appellant was convicted by a general court-martial consisting of members of various crimes involving a sham marriage. Despite his pleas of not guilty, he was found guilty of three specifications of signing false official records, stealing over $11,000 in unauthorized quarters allowances, and obtaining a Florida marriage certificate in order to defraud the Immigration and Naturalization Service (INS). These are violations of Articles 107, 121, and 134, UCMJ, 10 U.S.C. §§ 907, 921, 934. Upon conviction for all offenses, he was sentenced to confinement for one year and reduction to airman basic.

A detailed recitation of the tangled skein of marriages and purported annulments would serve no useful purpose. Facts necessary to dispose of the various issues are set forth in our analysis.

### Production of Material Witnesses

The defense requested the production of various witnesses from the Philippines. One was Mr. Reynaldo Elcano, court clerk, who would allegedly verify the authenticity of a Philippine document proving that Maria's first marriage to Jesus Navarro had been annulled. The general court-martial convening authority approved travel for Mr. Elcano from Manila to the trial site in Florida. A plane ticket awaited him in Manila; the United States stood ready to expedite a visa request.

At this juncture, according to Government witnesses at trial, Mr. Elcano balked. He told military investigators that "Elcano" was not his real name and the Philippine courts must grant him permission to travel abroad. According to these witnesses, Mr. Elcano failed to respond to numerous telephone calls. The military judge eventually denied the motion to produce Mr. Elcano. He found that the Government had made every reasonable good faith effort to produce him.

We find no error in the military judge's ruling. Simply stated, Mr. Elcano was not an "available" witness. *See* Mil.R.Evid. 804(a); R.C.M. 703(b)(3); *United States v. Tangpuz,* 5 M.J. 426 (C.M.A.1978); *United States v. Seek,* 13 M.J. 946, 947 (A.F.C.M. R.1982); *United States v. Davison,* 4 M.J. 702, 705 (A.C.M.R.1977). In our review of a military judge's decision on such matters, we will overturn only for an abuse of dis-

cretion. *Tangpuz,* 5 M.J. at 429. Here, we find no such abuse.

In *United States v. Bennett,* 12 M.J. 463, 467–468 (C.M.A.1982), the Court of Military Appeals discussed in depth an accused's right to secure witness attendance. The situation was the obverse of that in the present case—Sergeant Bennett's trial was held in the Philippines and he wanted to subpoena an American citizen residing within the United States. The Court held that military courts cannot enforce a subpoena beyond United States territorial limits. *Bennett,* 12 M.J. at 472.

If the military judge did not abuse his discretion in *Bennett,* we find it abundantly clear that the judge did not err here. Mr. Elcano was "out of pocket" through no fault of the United States. *See generally United States v. Burrow,* 16 U.S.C.M.A. 94, 36 C.M.R. 250, 253 n. 1 (1966); *United States v. Bieniek,* 43 C.M.R. 954, 957 (A.F. C.M.R.1971); *United States v. Jones,* 20 M.J. 919, 926 (N.M.C.M.R.1985). We read Federal civilian precedents as being in accord. *See, e.g., Mancusi v. Stubbs,* 408 U.S. 204, 212–213, 92 S.Ct. 2308, 2313, 33 L.Ed.2d 293, 301 (1972); *United States v. Zabaneh,* 837 F.2d 1249, 1259–1260 (5th Cir.1988); *see also United States v. Salim,* 855 F.2d 944, 954–955 (2d Cir.1988).

At trial, the defense suggested that the logistical problems with witnesses might be resolved by a change of venue to the Philippines. We find the military judge's refusal to grant a change of venue a proper exercise of discretion. *Bennett,* 12 M.J. at 472. *See also United States v. Tippit,* 7 M.J. 908, 911–912 (A.F.C.M.R. 1979).

We reason that the same rationale governs the matter of calling the appellant's mother-in-law, also a Philippine national, as a witness. She, too, refused to appear.

### Residual Hearsay under Mil.R.Evid. 803(24)

Two statements brought the appellant down at trial. One was Maria's written statement to the INS confessing that their marriage was bogus and that she was still married to Jesus Navarro. She fur-

ther explained that she and Jesus had approached the appellant with the idea of a fictitious "marriage" so that they might legally remain in the United States. She also indicated that she and the appellant had never slept together.

When agents of the Office of Special Investigations interviewed the appellant, he conceded in writing that everything Maria said was true.

At trial, the only corroboration for the appellant's confession to the OSI was Maria's statement to the INS. She eventually recanted her statement when she appeared as a defense witness. The prosecution then sought admission of Maria's statement to the INS as residual hearsay under Mil.R.Evid. 803(24). In so ruling, the military judge made the following specific findings:

a. The accused's sixth amendment right to confrontation is preserved by the presence of the witness.

b. The statement was signed and initialed by the declarant.

c. It was given under oath.

d. At that time the declarant lacked a motive to falsify.

e. The declarant is twenty-six years old, clearly intelligent and has an excellent command of the English language.

f. The statement relates to matters against her interest both criminally and administratively under Federal immigration laws.

g. Declarant had first hand knowledge of the events.

h. The statement contains mostly facts. The conclusions contained in the statements mostly concern decisions or thought processes which were in the purview of the declarant.

i. The statement is fairly detailed.

j. The statement is consistent with the accused's confession.

k. During her testimony the court paid particular attention to declarant's demeanor and manner on the stand. The court noted significant changes in her demeanor and manner in testifying when answering questions regarding

Special Agent McGahey's treatment of her and when she was denying that she said or meant what was said in the statement. In that regard I did not find her to be a credible witness.

l. While taken by a law enforcement agent to the INS Special Investigations Section the atmosphere was not coercive in nature.

We hold that the military judge ruled correctly. *See United States v. Powell*, 22 M.J. 141 (C.M.A.1986) and cases cited; *see also United States v. Guaglione*, 27 M.J. 268, 274–275 (C.M.A.1988); *United States v. Yeauger*, 27 M.J. 199, 202 (C.M.A.1988). In regard to item j above, we take notice of a recent Court of Military Appeals decision favoring admissibility when "interlocking" written admissions are present. *See United States v. Koistinen*, 27 M.J. 279, 282 (C.M.A.1988) ("a strong inference of reliability may be found").

### Other Matters

 The appellant also argues that Florida law should control as to whether his marriage was genuine. He further insists that Florida law presumes its validity. In response, the Government has recently furnished Florida authority suggesting that marriages such as this are void *ab initio*.*

We believe the issue is resolved by *United States v. Bolden*, 28 M.J. 127, 129–130 (C.M.A.1989). There, the Court of Military Appeals held that state law did not control the issue of whether a serviceman could be convicted of larceny for receiving housing allowances based on a sham marriage. We think *Bolden* is outcome-determinative.

 We have noted several other matters in our review of this complex case. The military judge failed to give the third statutory charge as to "degree of guilt." Article 51(c), UCMJ, 10 U.S.C. § 851(c). *See United States v. Morales*, 16 M.J. 503 (A.F.C.M.R.), *pet. denied* 16 M.J. 321 (C.M.A.1983). We conclude that the military judge erred in not giving the statutory instruction. Testing for prejudice, we find none.

---

* The Appellate Government's MOTION TO SUBMIT DOCUMENT, dated 7 May 1990, is

 We also notice that in preliminary instructions, the judge incorrectly stated the amount of quarters allowance taken. He stated the sum to be $1,148.00 when, in fact, it was $11,148.00. There was no objection. We can see no way in which the appellant was prejudiced since, in closing instructions on findings, the military judge correctly advised the voting members of the accurate figure.

In regard to instructions on findings, there were various unrecorded R.C.M. 802 conferences. However, there was no defense objection. We discern no error. *United States v. Myers*, 25 M.J. 573, 576 (A.F.C.M.R.1987); *United States v. Stewart*, 29 M.J. 621, 624 (C.G.C.M.R.1989).

 Finally, we note that the prosecution argued in presentencing that the members should give strong consideration to the fact that the appellant had not said "I'm sorry" during his unsworn statement. *See generally United States v. Chaves*, 28 M.J. 691 (A.F.C.M.R.1989) (appellant's failure to express remorse an inappropriate *sentencing factor*). Recently, in *United States v. Gibson*, 30 M.J. 1138 (A.F.C.M.R. 1990), we decided by a divided vote that it was not impermissible for trial counsel to so argue. Even if we were to agree with our concurring Brother in *Gibson*, we are satisfied that there was no prejudice here. The ultimate sentence of the court members—which did not extend to a punitive discharge or forfeitures—was so generous that any error was harmless. *United States v. Sales*, 22 M.J. 305 (C.M.A.1986).

The findings of guilty and the sentence are correct in law and fact and, on the basis of the entire record, are

AFFIRMED.

Senior Judges BLOMMERS and MURDOCK concur.

GRANTED.