UNITED STATES, Appellee,

v.

Joe D. NORMAN, Specialist Four, U. S. Army, Appellant.

No. 35,731.

CM 435228.

U. S. Court of Military Appeals.

Oct. 14, 1980.

For -Appellant: *Captain Courtney B. Wheeler* (argued); *Colonel Edward S. Adamkwiez Jr., Major Benjamin A. Sims, Captain Larry C. Schafer, Captain Willard E. Nyman, III* (on brief); *Colonel Robert B. Clarke.*

For Appellee: *Captain Charles A. Cosgrove* (argued); *Colonel Thomas H. Davis, Colonel R. R. Boller, Major Michael B. Kennett, Major Ted B. Borek, Captain Daniel A. Dolan, Captain Brian X. Bush* (on brief); *Major David McNeill, Jr., Captain Douglas P. Franklin.*

*Opinion of the Court*

EVERETT, Chief Judge.

At his general court–martial, the appellant pleaded guilty to four specifications of possessing phencyclidine and to four specifications of sale of the same drug, in violation of Article 92, Uniform Code of Military Justice, 10 U.S.C. § 892. He was sentenced to a dishonorable discharge, confinement at hard labor for 18 months, forfeiture of all pay and allowances, and reduction to the lowest enlisted grade. After the convening authority had approved the findings and the sentence, the United States Army Court

of Military Review returned the record for a new convening authority action because of an improper authentication of the record of trial. *See United States v. Cruz–Rijos*, 1 M.J. 429 (C.M.A.1976). In its unpublished opinion, that court observed: "Since this case antedates the *McCarthy* decision it is understandable that this matter was not considered by the reviewing authorities, however, full consideration should now be accorded this issue."

When the case was returned to the trial level, a limited hearing into the subject–matter jurisdiction over the offenses was conducted. *See O'Callahan v. Parker*, 395 U.S. 258, 89 S.Ct. 1683, 23 L.Ed.2d 291 (1969). At the hearing's conclusion, the military judge determined that jurisdiction did exist in the court-martial to try the appellant for the offenses alleged. *See Relford v. Commandant*, 401 U.S. 355, 91 S.Ct. 649, 28 L.Ed.2d 102 (1971). Again, the convening authority approved the findings and the sentence and, this time, the Court of Military Review affirmed.

■ This Court granted review of the appellant's claim that the court–martial lacked jurisdiction to try the offenses of which he was convicted. 5 M.J. 251 (C.M.A. 1978). *See United States v. McCarthy*, 2 M.J. 26 (C.M.A.1976). We now disagree with him. The appellant's buyers were both known to him as fellow servicemen; in fact, one of them had been at one time a member of the same squadron as appellant and they kept in constant contact with each other. That same person was known to the appellant as a dealer in drugs; and so the appellant must have known that the drugs sold to that person were for resale, as that buyer was not a user of phencyclidine. In each instance, the quantity of drugs sold was much larger than needed for one person.

■ Under these circumstances, we conclude that court–martial jurisdiction existed to try all eight offenses involved. The facts indicate that the drugs likely were directed back to the installation for use by other servicepersons. Even if the drugs

were to be limited to off–post use by the buyers themselves, that alone under these facts is so at odds with efficient operation of the military that such conduct may be reached for prosecution and punishment by the military justice system. *United States v. Trottier*, 9 M.J. 337 (C.M.A.1980). Furthermore, the drugs possessed by the appellant were those he then sold, so the possessions were simply steps toward the sale and, thus, also may properly be reached by court–martial. *See United States v. Trottier, supra.*

The decision of the United States Army Court of Military Review is affirmed.

Judge COOK concurs.

FLETCHER, Judge (concurring in part, and dissenting in part):

I will relate the facts as I understand them to the offenses charged.

Specifications 1 and 2–possession and sale of phencyclidine:

The appellant met by chance a soldier named Lopez, a former member of the same military unit as the appellant, at a civilian bar in Fayetteville, eight miles outside Fort Bragg, at 0050 hours, May 21, 1976. He called Lopez over to his van and offered to sell the latter some phencyclidine. Lopez left and borrowed $30.00 from a police investigator, Dawes, and in a controlled buy, returned to buy three "dimes" from the appellant.

Specifications 3 and 4–possession and sale of phencyclidine:

Later that same day, appellant called through Lopez' barrack's window. He asked if Lopez knew anyone who wanted to buy drugs. Lopez told the appellant that he would let him know. Lopez, who was a CID informant, met a military police investigator after duty hours at a civilian restaurant and was given $80.00. Lopez, in Army fatigues, went to appellant's off–base residence and purchased some phencyclidine around 1950 hours, May 21, 1976, *and indi-*

cated drugs were for members of the unit who wanted it.

Specifications 5 and 6–possession and sale of phencyclidine:

On May 27, 1976, the appellant sold to Lopez and possessed phencyclidine at his off–base residence in the presence of Private First Class Tune, an undercover military police investigator.

Specifications 7 and 8–possession and sale of phencyclidine:

On June 1, 1976, *Lopez saw the appellant on post.* The appellant told him that the appellant had some *good quality drugs for $15.00* instead of $10.00. Appellant also told Lopez that he would be home that night. Lopez and Tune met the military police officer at a restaurant and got $30.00 for two "dime" packages and went to an off–base residence and bought the drugs.

I concur with the majority in affirming the Court of Military Review as to specifications 3, 4, 7 and 8.

Specifications 3 and 4 fall within the purview of the law as set forth in *United States v.Chambers*, 7 M.J. 24 (C.M.A.1979), where, though the drug transaction occurred off–base, the person receiving the drugs was a member of the military, and that person intended, as shown by the evidence, to return to the installation with the drugs.

The facts of specifications 7 and 8 are encompassed in the principles set forth in *United States v. Strangstalien*, 7 M.J. 225 (C.M.A.1979), wherein we accepted without citation the concept stated in *United States v. Sandy*, 4 M.J. 102 (C.M.A.1977):

> We recognize that in instances of drug sales, transfers and deliveries which occur off post, the fact that all the essential negotiations and criminal intent were formulated on post is critical, and often determinative, in finding military jurisdiction for the offense under *Relford v.*

Commandant, 401 U.S. 355 [91 S.Ct. 649, 28 L.Ed.2d 102].

I must disagree with the majority as to specifications 1, 2, 5 and 6. Here once again, the majority, as in *United States v. Trottier*, 9 M.J. 337 (C.M.A.1980), assume facts not on the record to conclude compliance with the *ad hoc* approach dictated in *Relford v. Commandant*, 401 U.S. 355, 91 S.Ct. 649, 28 L.Ed.2d 102 (1971). The majority herein states in conclusion: "The facts indicate that the drugs likely were directed back to the installation for use by other servicepersons." 9 M.J. at 356. I would note that in these specifications the drugs were sold to an on–duty law enforcement officer or through a controlled buy in conjunction with these officers.

I suggest, as I did in *United States v. Trottier, supra*, that calling as a witness the commanding officer of the seller (appellant herein) would produce for the record the effect a narcotics dealer has on a military unit and its ability to accomplish its mission. Once again, only two questions to the commander as in *Trottier* would complete the record, relieving any appellate court from guessing at "service connection" not appearing on the record.

I state here, as I did in *United States v. Trottier, supra,* the following questions:

> "In this case it takes the calling of one additional witness, either the accused's immediate commanding officer or the victim's and tendering to that person two questions.

> "Do you have an opinion as to whether the acts charged here had an effect on the efficiency of your unit?" If the answer is yes, then: "Please state what this effect is?" Situs of the alleged acts becomes immaterial when the answer envelopes the *assumed effect of drugs* on the military, as set forth in the majority opinion.[1]

*Id.* at 353.

---

1. *See* para. 138e, Manual for Courts–Martial, United States, 1969 (Revised edition); Mil.R. Evid. Section VII, Opinions and Expert Testimony.

I believe that the illegal use of narcotics by persons in any society can be a detriment to the performance of that person's role in that society.

With this general statement, I do not mean to imply that I believe this conclusion in any way relieves the Government of its burden to go forward with evidence to prove its case in each individual trial as to jurisdiction. I fear trial by assumption.