UNITED STATES

v.

**Christopher N. BARTON, Yeoman Third Class, U. S. Coast Guard, CGCM 9943.**

**Docket No. 830.**

U. S. Coast Guard Court of Military Review.

28 April 1981.

Trial Counsel: LT David R. Innis, USCGR.

Asst. Trial Counsel: LCDR Steven J. Delaney, USCG.

Defense Counsel: LCDR Kenneth E. Gray, USCG.

Appellate Defense Counsel: LT Judith M. Hammond, USCGR.

Appellate Government Counsel: LCDR Robert W. Ferguson, USCG.

## OPINION

MORGAN, Chief Judge:

Yeoman Third Class Christopher N. Barton, USCG, was tried by general court-martial military judge 15–18 September 1975. He pleaded guilty to eleven violations of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934 involving the obstruction of mail matter, larceny of mail matter, wrongful possession of amphetamine pills and marijuana, wrongful distribution of marijuana, and unlawful receipt of stolen government property. He also pleaded guilty to two specifications alleging the larceny of government property in violation of Article 121, UCMJ, 10 U.S.C. § 921, guilty to three offenses of forgery in violation of Article 123, UCMJ, 10 U.S.C. § 923 and guilty to a single specification alleging desertion with intent to remain away permanently in violation of Article 85, UCMJ, 10 U.S.C. § 885. The guilty pleas were entered in compliance with a pretrial agreement. The military judge determined to his satisfaction that the pleas were provident and found the accused guilty in accordance with his pleas. The military judge thereafter sentenced the accused to be confined at hard labor for three years, to forfeit all pay and allowances for three years, to be reduced to pay grade E–1, and to be dishonorably discharged from the Coast Guard. The convening authority set aside the finding of guilty of the receipt of stolen property specification and, in compliance with the pretrial agreement, approved only one year of the confinement and the remaining portions of the sentence.

The record of trial originally forwarded for appellate review consisted of video tapes of the trial proceedings and a court reporter's log of pertinent times and events. The record had been prepared in compliance with applicable Coast Guard directives and was referred to the Court of Military Review for review in due course. On 1 March 1976 the Court determined that the video cassettes were not susceptible of being reviewed since they did not constitute a lawful record of trial as required by Article 66(c), UCMJ, 10 U.S.C.A. § 866(c). The Court therefore returned the record to the Chief Counsel of the Coast Guard.

The General Counsel of the Department of Transportation certified the case to the Court of Military Appeals for review pursuant to Article 67(b)(2), UCMJ, 10 U.S.C.A. § 867(b)(2). In a decision dated 30 October 1978 the Court of Military Appeals held that video tapes could not be substituted for written or printed transcripts of trial proceedings. The decision of the Coast Guard Court of Military Review was affirmed and the record of trial was returned to the General Counsel for action consistent with the Court's decision. *U. S. v. Barton*, 6 M.J. 16 (CMA 1978).

In due course the video tapes and allied papers were returned to Commander, Second Coast Guard District for action consistent with the decision of the Court of Military Appeals. A typewritten verbatim record of trial was prepared and the Commander, Second Coast Guard District took a new action on the record approving the findings of guilty formerly approved and only so much of the sentence as provided for confinement at hard labor for one year,

reduction to pay grade E–1, and dishonorable discharge from the service.

Appellate Defense Counsel contends that the court-martial lacked subject matter jurisdiction of the three offenses involving the possession of marijuana and amphetamines and, additionally, that the accused has been prejudiced by the inordinate posttrial delay in the disposition of his case since it was returned to the convening authority in November 1978.

The specifications charging wrongful possession of amphetamine pills and marijuana allege the sites of the offenses as, respectively, 4236 NW Tenth Street, Oklahoma City, Oklahoma and in his car at the parking lot of that same address. Evidence heard by the military judge on a motion to suppress the amphetamine pills and marijuana as having been illegally seized revealed that 6.3 grams of marijuana was seized from a bag in the front seat of the accused's car when he was apprehended in the parking lot at his apartment on the morning of 30 January 1975. Thereafter during the search of his apartment for a poster stolen from the mails, the amphetamine pills and an additional quantity of marijuana were seized. It may be assumed that the accused was on his way to work at the Coast Guard Institute when he was apprehended in the parking lot but there is no direct evidence of that fact and the accused's status was not explored by the military judge during his inquiry into the providence of the guilty pleas[1]. Thus the record shows mere possession of the controlled substances by the accused while off duty and off the military reservation.

When this case was tried in 1975 military law with respect to court-martial jurisdiction to try military personnel for the off duty-off base possession of marijuana and other controlled substances was that announced by the Court of Military Appeals in *U. S. v. Beeker*, 18 U.S.C.M.A. 563, 40 C.M.R. 275 (1969). In that case the Court said:

"[U]se of marijuana and narcotics by military persons on or off a military base has special military significance. * * * [T]he use of these substances has 'disastrous effects . . . on the health, morale and fitness for duty of persons in the Armed Forces' * * *.

"As with the case of use of marijuana, possession of marijuana by military persons is a matter of immediate and direct concern to the military as an act intimately concerned with prejudice to good order and discipline or to the discredit of the armed forces. (citations omitted) Like wrongful use, wrongful possession of marijuana and narcotics on or off base has singular military significance which carries the act outside the limitations on military jurisdiction set out in [*O'Callahan v. Parker*, 395 U.S. 258, 89 S.Ct. 1683, 23 L.Ed.2d 291 (1969)]." 40 C.M.R. at 277.

In *U. S. v. McCarthy*, 2 M.J. 26 (CMA 1976) the Court rejected *U. S. v. Beeker* as precedent for determining court-martial jurisdiction over drug offenses. The Court quoted from its prior decision in *U. S. v. Moore*, 1 M.J. 488 (CMA 1976) where the question of court-martial jurisdiction was tested by the standards announced by the Supreme Court in *Relford v. Commandant*, 401 U.S. 355, 91 S.Ct. 649, 28 L.Ed.2d 102 (1971) as follows:

"What *Relford* makes clear is the need for detailed, thorough analysis of the jurisdictional criteria enunciated to resolve the service-connection issue in all cases tried by court-martial. A more simplistic formula, while perhaps desirable, was not deemed constitutionally appropriate by the Supreme Court. It no longer is within our providence to formulate such a test." 2 M.J. at 28.

Thereafter the Court applied the "*Relford* factors balancing test" on a case by case basis. See e. g. *U. S. v. Conn*, 6 M.J. 351 (CMA 1979); *U. S. v. Strangstalien*, 7 M.J. 225 (CMA 1979); *U. S. v. Cornell*, 9 M.J. 98 (1980).

---

1. During oral argument appellate defense counsel expressed satisfaction that the providence inquiry conducted by the military judge fulfilled the requirement of *U. S. v. Care*, 18 U.S.C.M.A. 535, 40 C.M.R. 247 (1969).

In *U. S. v. Trottier*, 9 M.J. 337 (CMA 1980) the Court affirmed the accused's conviction for off base-off duty sale of marijuana and LSD under circumstances having a substantial military connection under any of the standards formerly applied. Nevertheless, the Court took the occasion to rearticulate its position with respect to court-martial jurisdiction over off base-off duty drug offenses. Turning back to the rationale of *U. S. v. Beeker* the Court said:

"It has often been asserted and as often acknowledged, that drug abuse in the military is a most serious problem."

\* \* \* \* \* \*

"Without the maintenance of a credible armed force, the United States is at serious military and geopolitical disadvantage. The need is overwhelming to be prepared to field at a moment's notice a fighting force of finely tuned, physically and mentally fit men and women—and satisfaction of that need is not compatible with indiscriminate use of debilitating drugs. There are, in short, abundant and persuasive grounds for giving weight to the representations made to the Congress by the country's military leaders that drug abuse by servicepersons is rampant and that the armed services must curtail such abuse through exercise of court-martial jurisdiction to the greatest extent legally permissible.

\* \* \* \* \* \*

"[T]he gravity and immediacy of the threat to military personnel and installations posed by the drug traffic and by drug abuse convince us that very few drug involvements of a service person will not be 'service connected'.

\* \* \* \* \* \*

"[A] present day reading and application of the *Relford* criteria is compelling in favor of court-martial jurisdiction over the vast majority of drug offenses committed by our servicepersons. \* \* \* [A]uthority stemming from the war power \* \* \* applies with great emphasis to drug offenses and their impact on the role of our modern armed force.

\* \* \* \* \* \*

"We are now entirely persuaded that \* \* it is necessary and proper in today's world that court-martial jurisdiction over most drug offenses be invoked as a proper exercise of the war powers." 9 M.J. at 345, 346, 351, 352.

Thus, the Court firmly declared its intention to expand the limits on court-martial jurisdiction over off base drug offenses drawn in *U. S. v. McCarthy, U. S. v. Conn* and similar cases. However, it also noted in footnote 34 that it did not return fully to the *Beeker* holding and in footnote 28 it gave two examples of off base drug involvement by service personnel which might not support court-martial jurisdiction. Other cases in which the Court has found court-martial jurisdiction over off base drug offenses since *Trottier* had substantial evidence in the records showing a military connection. See *U. S. v. Norman*, 9 M.J. 355 (CMA 1980); *U. S. v. Smith*, 9 M.J. 359 (CMA 1980).

■ As indicated heretofore the record before us is barren of any competent evidence tending to establish a service connection between the accused's off base-off duty possession of the amphetamine pills and marijuana and his performance of duty or accomplishment of the Coast Guard mission. Possession alone would support jurisdiction under the rule of *U. S. v. Beeker*. That rule was repudiated in *U. S. v. McCarthy* and its progeny. *U. S. v. Trottier* lifted the limitations on jurisdiction imposed by McCarthy but did not return fully to the per se rule announced in *Beeker*. Under this state of the law we believe that the accused is entitled to have the specifications involving possession of amphetamine pills and marijuana dismissed.

The videotapes and allied papers constituting the original "record of trial" in this case were returned to the convening authority on 20 November 1978 for action consistent with the decision of the Court of Military Appeals. The transcribed record of trial was authenticated by the military judge 7 February 1980 and the convening authority took action on the record 30 May

1980. The accused completed his sentence to confinement at hard labor 30 August 1976 and was released from active duty to "Home Awaiting Appellate Review" status 3 September 1976. Nevertheless, appellate defense counsel contends that the accused was prejudiced by the inordinate delay from the time the videotape record was returned to the convening authority 20 November 1978 until the date of his action 30 May 1980.

Paragraph 506–5(b) of the Coast Guard Military Justice Manual, CG–488 provides that in cases not involving continuous posttrial confinement of the accused in excess of 90 days the convening authority of a general court-martial shall account for the delay when his action on the record is not taken within 180 days from the date the sentence was adjudged. Counsel contends that this provision establishes a reasonable time within which the convening authority's action must be taken in cases such as this and that the established time constraint was violated to the accused's prejudice.

■ The original action by the convening authority in this case was taken less than ninety days after sentence was adjudged in full compliance with the mandate of *Dunlap v. Convening Authority*, 23 U.S.C.M.A. 135, 48 C.M.R. 751 (1974). Thus, the provisions of paragraph 506–5 of the Military Justice Manual have not been applicable to this case. The question presented then is whether the delay in processing the case following remand by the Court of Military Appeals has been oppressive so as to prejudice some substantial right of the accused.

The Court of Military Appeals has said repeatedly that unexplained posttrial delay, standing alone, will not justify reversal of an otherwise valid conviction. See *U. S. v. Prater*, 20 U.S.C.M.A. 339, 43 C.M.R. 179 (1971); *U. S. v. Wheeler*, 21 U.S.C.M.A. 468, 45 C.M.R. 242 (1972); *U. S. v. Banks*, 7 M.J. 92 (CMA 1979). Cf. *Dunlap v. Convening Authority, supra; U. S. v. Brewer*, 1 M.J. 233 (CMA 1975). Addressing the issue of posttrial delay in *U. S. v. Green*, 4 M.J. 203 (CMA 1978) the Court said:

" * * * [A]bsent prejudicial error occurring during the court-martial proceed-

ings, an inordinate delay at the appellate level does not justify dismissal of the charges. A dismissal is appropriate only where an accused would be either prejudiced in the presentation of his case at a rehearing or . . . no useful purpose would otherwise be served by continuing the proceedings'. *U. S. v. Gray*, [22 USCMA 443 at 445, 47 CMR 484 at 486 (1973)]."

See also *U. S. v. Davis*, 20 USCMA 541, 43 CMR 381 (1971); *U. S. v. Whitmire*, 21 USCMA 268, 45 CMR 42 (1972); *U. S. v. Timmons*, 22 USCMA 226, 46 CMR 226 (1973); *U. S. v. Burns*, 2 M.J. 78 (CMA 1976); *U. S. v. Johnson*, 3 M.J. 143 (CMA 1977). The accused has not been prejudiced by the delay in the posttrial processing of his case.

For the reasons discussed above the findings of guilty of specifications 7, 9 and 10 of Charge I are set aside and those specifications are dismissed. The sentence has been reassessed. Considering the number and gravity of the remaining offenses of which the accused stands properly convicted, the sentence as it reaches us is entirely appropriate.

The remaining findings of guilty and the sentence as approved on review below are affirmed.

Judges HOLLAND, VERSAW, BEAVER and BRIDGMAN concur.