**UNITED STATES, Appellee,**

v.

**Raymond C. BARROR, Jr., Sergeant
U.S. Air Force, Appellant.**

No. 52,659.
ACM 24607.

U.S. Court of Military Appeals.

March 16, 1987.

For Appellant: *Colonel Leo L. Sergi,
Major Kathleen G. O'Reilly, Captain Deborah J. Hudspeth.*

For Appellee: *Colonel Kenneth R. Rengert and Colonel Andrew J. Adams, Jr.*

*Opinion of the Court*

COX, Judge:

This case concerns the correctness of a military judge's determination that an out-of-court statement was admissible as so-called "residual hearsay" under Mil.R.Evid. 804(b)(5), Manual for Courts-Martial, United States, 1984.[1] 21 M.J. 151. We hold that the record of trial is insufficient here to sustain the judge's ruling.

Appellant pleaded guilty unconditionally to one specification of forcible sodomy, in violation of Article 125, Uniform Code of Military Justice, 10 U.S.C. § 925. With respect to that specification, he conceded sodomizing a fellow servicemember while the latter slept. Appellant also entered a conditional plea of guilty to sodomizing his minor stepson, a child under the age of 16, in violation of the same article.[2] That plea

---

1. "The following are not excluded by the hearsay rule if the declarant is unavailable as a witness[:] ... A statement not specifically covered by any of the foregoing exceptions [*i.e.,* "*Former testimony,*" "*Statement under belief of impending death,*" "*Statement against interest,*" "*Statement of personal or family history*"] but having equivalent circumstantial guarantees of trustworthiness."

2. Appellant's approved sentence extends to a bad-conduct discharge, confinement for 30 months, forfeiture of $397.00 pay per month for 30 months, and reduction to the lowest enlisted grade.

was conditioned, R.C.M. 910(a)(2), Manual, *supra*,[3] upon the correctness of the military judge's denial of appellant's motion to suppress the child's pretrial statement.

Through a stipulation of fact, the military judge was informed that appellant's 14–year-old stepson, C (the alleged victim), had made oral statements to agents of the Air Force Office of Special Investigations (OSI) to the effect that appellant had sodomized him and forced him to reciprocate. These statements were made in the early morning hours of December 22, 1983, and the conduct was alleged to have occurred a few hours earlier during the preceding evening. It was also stipulated that, several hours later on the morning of the 22d, C was reinterviewed and a statement was prepared by the agents "with ... [C's] assistance." This statement was then "reviewed by" C, "sworn [as] to its truthfulness and signed by" C. It was further stipulated that, at the time of trial, C was "unavailable ... as a witness," within the meaning of Mil.R.Evid. 804(a)(2),[4] by reason of his persistent refusal to testify; and that this refusal was based on his desire not to aid the prosecution of his stepfather. It was also stipulated that the Government had undertaken "all good faith efforts to procure ... [C's] testimony" and that the defense had been notified of the Government's intent to use the pretrial statement.

A separate stipulation of fact recited that a forensic chemist had analyzed the blood and saliva of appellant and C. The chemist concluded that semen found on C's pajamas, which had been secured shortly after the alleged incident, "could not have originated from" C, but could have come from appellant. Further identification of the source was not possible due to the limited quantity of semen detected.

The military judge conducted a personal inquiry of appellant on the record and established that he consented to all of the foregoing stipulations. *See* R.C.M. 811(c).

In addition to the stipulations, trial counsel made a series of oral and written "proffers." These included: the general chronology of events, beginning with the initial notification of the law-enforcement authorities; the authorities' prompt arrival at the scene and brief interview of Mrs. Barror; the initial interview of C and the gist of his statement; the seizure of the pajamas; the subsequent interviews of C and the preparation and signing of the written statement; the conclusions of the forensic chemist; the fact that neither C nor his mother had repudiated or recanted their statements and, in fact, more than 6 months later had reaffirmed the truthfulness of the statements; and their subsequent refusal to testify.

For purposes of the motion, defense counsel accepted the accuracy of the Government's proffers. *Cf. United States v. Stubbs*, 23 M.J. 188, 194 (C.M.A. 1987). The defense did contest, however, the reliability of C's pretrial statement and argued that appellant had been denied his Sixth Amendment rights under the Confrontation Clause.[5] Based upon the foregoing stipulations and averments—and nothing else— the military judge pronounced C's written pretrial statement to be so reliable as to be admissible in lieu of confrontation and as an exception to the rule against hearsay. The Court of Military Review agreed. 20 M.J. 501 (1985).

In *United States v. Hines*, 23 M.J. 125 (C.M.A. 1986), we recently considered substantially the same issue. In that case, the

3. R.C.M. 910(a)(2) states:
   With the approval of the military judge and the consent of the Government, an accused may enter a conditional plea of guilty, reserving in writing the right, on further review or appeal, to review of the adverse determination of any specified pretrial motion. If the accused prevails on further review or appeal, the accused shall be allowed to withdraw the plea of guilty.

4. "'Unavailability as a witness' includes situations in which the declarant ... persists in refusing to testify concerning the subject matter of the declarant's statement despite an order of the military judge to do so."

5. That clause provides: "In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him."

*ex parte,* out-of-court statements to law-enforcement authorities of the two victims (Hines' stepdaughters) and their mother (Hines' wife) were admitted in evidence, despite the witnesses' refusal to testify at trial, on the ground that their testimony might assist in the conviction and punishment of Hines. We traced the evolution of the Confrontation Clause from its original purpose of preventing trials by affidavit and ensuring "face-to-face encounter[s]" at trial, *California v. Green,* 399 U.S. 149, 156, 90 S.Ct. 1930, 1934, 26 L.Ed.2d 489 (1970), to the more recent understanding that, in certain circumstances, alternatives to direct confrontation may suffice where the "hearsay [is] marked with such trustworthiness that 'there is no material departure from the reason of the general rule.'" *Ohio v. Roberts,* 448 U.S. 56, 65, 100 S.Ct. 2531, 2539, 65 L.Ed.2d 597 (1980), quoting *Snyder v. Massachusetts,* 291 U.S. 97, 107, 54 S.Ct. 330, 332, 78 L.Ed. 674 (1934). We concluded that, to the extent *ex parte* interviews are tendered as substitutes for the right of confrontation, they must be shown to have been taken under such circumstances as to effectively assure that confrontation values have been satisfied. 23 M.J. 131.

In contrast to the instant case, the *Hines* record of trial reflected "[a] lengthy evidentiary hearing ... on [*inter alia*] the manner in which the statements were taken." *Id.* at 127. Upon such a record, we could agree with the lower courts "that the statements bore 'indicia of reliability' and 'circumstantial guarantees of trustworthiness.'" *Id.* at 136. Even so, we were still not persuaded that the statements were "obtained with such a degree of bipartisanship that an accused ... [could] not reasonably contend that the purposes of cross-examination ... [had] been served." *Id.* at 137; *see also Ohio v. Roberts* and *Snyder v. Massachusetts,* both *supra.* Indeed, we signaled that we would not ordinarily expect the "investigative process" alone to equate to the "judicial process" for confrontation purposes. 23 M.J. at 137. It was Hines' own

admission [that] so confirm[ed] the reliability of the declarants' statements ... that our misgivings about 'afford[ing] the trier of fact a satisfactory basis for evaluating the truth of the prior statement,' *California v. Green,* 399 U.S. at 161, 90 S.Ct. at 1936, and about appellant's inability to confront his adversaries ... [were] *pro tanto* extinguished.

23 M.J. at 137–38 (footnote omitted).

The instant case, however, does not measure up to the *Hines* yardstick, either in terms of one's ability to understand the circumstances surrounding the taking of the statement or of its confirmation through corroboration. While we know that the statement exists, that it was sworn to and signed, and that it came into being early in the chronology of events, the record reveals virtually nothing of the dynamics of the interview/ interrogation process itself or the state of mind of the declarant. In short, there is no meaningful basis for assessing the candor of the declarant or the accuracy of the statement. Moreover, the corroborating factors—that there was semen on C's pajamas and that appellant could not be excluded as the source—are anything but conclusive. Thus we are not satisfied, on this record, that appellant's inability to confront his accuser was insignificant. Indeed, these relatively meager facts make this case virtually indistinguishable from most cases in which the police have taken statements from a witness, since there is usually some independent indication of a *corpus delicti.* If this statement is so reliable that confrontation may be excused, then virtually every statement to police will be admissible where the declarant is "unavailable." We saw no indication in *Hines* that the Confrontation Clause has been relaxed to that extent. *See* 23 M.J. at 130–31.

Beyond confrontation principles, we have practical concerns about sanctioning the routine substitution of police-station interviews for adversary proceedings, because accused servicemembers must ultimately depend upon government officials to produce unwilling witnesses at courts-martial. R.C.M. 703. When difficulties or inconven-

iences arise in obtaining the witnesses, or when it appears that they may be "softening" in their position, there may be a certain human tendency—or at least the appearance of one—for prosecutors to relax somewhat their efforts to obtain the witnesses—if they already have admissible accusatory statements in hand. For this reason, we have been quite insistent that all reasonable means of obtaining crucial witnesses' presence be undertaken before we will consider approving substitutes. *See, e.g., United States v. Cokeley,* 22 M.J. 225 (C.M.A. 1986); *United States v. Hinton,* 21 M.J. 267 (C.M.A. 1986).[6]

Parenthetically we note that, as was also true in *Hines,* there are no facts of record here suggesting that the alleged victim refused to testify on account of appellant's use of coercion, control, influence, etc. In such a circumstance, "[t]he Sixth Amendment does not stand as a shield to protect the accused from his own misconduct or chicanery." *United States v. Carlson,* 547 F.2d 1346, 1359 (8th Cir. 1976), *cert. denied,* 431 U.S. 914, 97 S.Ct. 2174, 53 L.Ed.2d 224 (1977). Based upon a proper record, a finding that an accused engaged in such activity can result in the accused's waiver of his right to confront the witness. *Steele v. Taylor,* 684 F.2d 1193, 1201–02 and n.10 (6th Cir. 1982), *cert. denied,* 460 U.S. 1053, 103 S.Ct. 1501, 75 L.Ed.2d 932 (1983); *United States v. Balano,* 618 F.2d 624, 628–30 (10th Cir. 1979), *cert. denied,* 449 U.S. 840, 101 S.Ct. 118, 66 L.Ed.2d 47 (1980); *United States v. Carlson, supra* at 1357–60. It does not appear sufficient to base such a waiver solely on inferences derived from the existence of a parent-child relationship. To the contrary, the evidence must point to specific actions on the part of, or imputable to, the accused. *See United States v. Mastrangelo,* 693 F.2d 269, 273–74 (2d Cir. 1982), *on remand,* 561 F.Supp. 1114 (E.D.N.Y.), *aff'd,* 722 F.2d 13 (2d Cir. 1983), *cert. denied,* 467 U.S. 1204, 104 S.Ct. 2385, 81 L.Ed.2d 343 (1984); *Olson v. Green,* 668 F.2d 421–22 (8th Cir.), *cert. denied,* 456 U.S. 1009, 102 S.Ct. 2303,

73 L.Ed.2d 1305 (1982); *State v. Hansen,* 312 N.W.2d 96, 105 (Minn. 1981). However, the Confrontation Clause and the Compulsory Process Clause are, in a sense, opposite sides of the same coin. *See* Westen, *Confrontation and Compulsory Process: A Unified Theory of Evidence for Criminal Cases,* 91 Harv.L.Rev. 567 (1978). Thus, evidence tending to establish that an accused controls a witness to the extent of being able to produce him when it is in the accused's interest, *cf. United States v. Hines,* 23 M.J. at 131–33, would also seem to suggest that the accused controls the witness' refusal to testify when conditions are adverse to the accused's interest.

Of course in the instant case, since appellant candidly confessed his guilt to the offense after losing the motion, we are not, ultimately, concerned about the reliability of C's statement. Rather, what is at stake is the ability of an accused to put the Government to its burden of proving him guilty, beyond a reasonable doubt, using only legally competent evidence. As the evidence available to the Government did not meet that criterion, appellant is entitled, in accordance with his agreement with the Government and under the provisions of the Manual, to withdraw his plea of guilty.

The decision of the United States Air Force Court of Military Review is reversed as to specification 2 of the Charge and the sentence. The finding of guilty thereon is set aside. The record of trial is returned to the Judge Advocate General of the Air Force for remand to that court, which may dismiss the affected specification and reassess the sentence based on the remaining findings of guilty, or set aside the sentence and order a rehearing on the affected specification and the sentence. In the event of a rehearing, appellant may replead to the affected specification.

Chief Judge EVERETT concurs.

Judge SULLIVAN did not participate.

---

**6.** There can be no claim here, of course, that the Government did not pursue C with adequate zeal, since appellant stipulated to C's unavaila-

bility and the Government's good-faith efforts to procure his testimony.