**UNITED STATES**

v.

**Staff Sergeant William D. BRIDGES, FR 265–96–4155, United States Air Force.**

**ACM 25941.**

U.S. Air Force Court of Military Review.

Sentence Adjudged 9 Sept. 1986.

Decided 19 Aug. 1987.

Appellate Counsel for the Appellant: Colonel Leo L. Sergi and Major Charles L. Wille.

Appellate Counsel for the United States: Colonel Joe R. Lamport, Lieutenant Colonel Robert E. Giovagnoni and Captain Marc Van Nuys.

Before HODGSON, FORAY and HOLTE, Appellate Military Judges.

## DECISION

HODGSON, Chief Judge:

On the evening of 25 February 1986, Arturo Sealy, the appellant's brother-in-law, was admitted to the University of California-Davis Medical Hospital with multiple knife wounds to the chest, thigh and hand. This appeal centers upon the admissibility of pretrial statements by him and the appellant's wife, Camille Bridges, made pursuant to the residual hearsay exception of Mil.R.Evid. 803(24) and 804(b)(5) identifying the appellant as the attacker. For the reasons stated in this opinion we hold the statements were properly admitted.

The record established that around midnight of 25 February, a crying and excited woman who identified herself as Camille Bridges called the security police and told the desk sergeant "her husband had stabbed her brother." A Department of Defense police officer who was patrolling the housing area was sent to the scene. There he saw the victim, Sealy, and met Mrs. Bridges who was crying. She related, "My husband cut him." She indicated that she and the appellant were involved in an argument over who was going to use the car. He grabbed her from the rear and her brother, Arturo, came to her aid. The two men struggled but the appellant broke away, ran to the bedroom, took a knife from a gym bag and attacked her brother in the carport driveway. The appellant hid the knife under a neighbor's car, the neighbor found it and eventually turned it over to the authorities. While the police officer was at the house, the appellant walked up and said, "I must be the one you are looking for."

A little after midnight, Office of Special Investigations (OSI) investigators arrived and Mrs. Bridges told them what happened which was essentially the same story she told the police man who was first on the scene. When asked to provide a written statement of the incident, she sat down at the dining table and wrote it out in narrative form. There was no interrogation as that term is commonly used.

While Sealy was being treated that night for his injuries, he told the attending physician it was not an accident as "[he] was attacked." About 1400 hours the next afternoon, OSI agents arrived at the hospital to interview Sealy. He described what occurred—his account coincided with that of Mrs. Bridges—and was asked to put it in writing. He agreed and asked that one of the agents act as his amanuensis in this regard. Mrs. Bridges was also at the hospital visiting her brother and was asked by the OSI investigators to sign a typed copy of the statement she had earlier written, which she did. Mrs. Bridges indicated she was under a "lot of pressure" from the appellant's family not "to report the incident." As she appeared to be emotionally troubled over the situation, the investigators referred her to the chaplain's office.

The morning following the incident the appellant's squadron section commander went to his residence to get some clothing and toilet articles. Mrs. Bridges again related that she and the appellant had an argument during which her brother interceded and in the course of the struggle that followed, her husband broke loose,

took a knife from a gym bag and stabbed her brother.

During her testimony at trial, Mrs. Bridges admitted that she and the appellant had an argument over the use of their car and her brother, Arturo, came to her defense. She denied, however, that her husband attacked her brother. She stated she was the one holding the knife and when the appellant tried to take it from her, Arturo Sealy was accidently stabbed as she swung her arm. She acknowledged telling the desk sergeant and the police officer that her husband stabbed her brother, but those statements were not truthful as she "was crazy" and not thinking.

In rebuttal by the prosecution, a forensic pathologist testified that it was unlikely that the three wounds suffered by the victim could have been inflicted in a single sweeping motion.

The trial judge ruled that the out-of-court statements by Mrs. Bridges and her brother, Arturo Sealy, possessed a sufficiently high degree of trustworthiness as to be admissible as residual hearsay under Mil.R.Evid. 803(24) and 804(b)(5). The confrontation issue that the Court of Military Appeals stressed so vigorously in *United States v. Hines*, 23 M.J. 125 (C.M.A.1986) and *United States v. Barror*, 23 M.J. 370 (C.M.A.1987), does not apply to Mrs. Bridges because she testified at trial. *United States v. Whalen*, 15 M.J. 872 (A.C.M.R.1983). Therefore, the primary issue regarding her pretrial statement is its trustworthiness, not confrontation of her by the appellant. Because Mrs. Bridges' statement as well as that of Arturo Sealy were obtained by police investigators, the prosecution must establish that the circumstances contained in the statements were not the product of subtle biases introduced by the interviewers or the questioning techniques they employed. *United States v. Hines* and *United States v. Barror, supra.*

In *Barror*, the Court of Military Appeals held that the trial judge erred in admitting the out-of-court statement of a 14 year old boy as:

[T]he record reveals virtually nothing of the dynamics of the interview/interrogation process itself or the state of mind of the declarant. In short, *there is no meaningful basis for assessing the candor of the declarant or the accuracy of the statement.* (Emphasis added.)

At page 372.

We sense a concern, and one we share, in both *Barror* and *Hines*, that the statements of young children and adolescents have the potential to be influenced by the setting of the interview and the questioning methods used. Hence, the dynamics of the interview is a major factor in determining the trustworthiness of an out-of-court statement. Here, the declarant is a mature 35 year old woman and the setting for the interview was her own dining room not a police station. There was no questioning as such, but a request to write out, in her own words, what had happened. The statement she gave was made within minutes after the incident. Her candor and the accuracy of the statement is buttressed by her frantic assertion to the security police desk sergeant that her husband had stabbed her brother. She repeated this claim moments later while still in an excited state, when a police officer arrived on the scene. Mil.R.Evid. 803(2) recognizes that statements made under the stress of excitement possess inherent reliability. The underlying reason for this conclusion is that the declaration is impulsive and that the declarant lacks time for reflective thought. *United States v. Whitney*, 18 M.J. 700 (A.F.C.M.R.1984).

When Mrs. Bridges was asked the next morning to execute a typed copy of her handwritten statement, she readily agreed although she indicated she was under family pressure to say nothing. Again the setting was non-confrontational and took place in a hospital waiting room. The record is clear that Mrs. Bridges was not hectored into making a statement, and when it became apparent she was emotionally distressed over the incident and her part in it, she was referred to an agency which could provide professional counseling.

The background to Arturo Sealy's statement is much the same as Mrs. Bridges'. He also is a mature adult. While being

**918**

treated for his wounds, he told the doctor he was "attacked," disclaiming any suggestion that his injuries were accidental. Again the interview was not in a custodial setting, but in a hospital. He was asked to relate what happened which he did and ultimately his verbal narration was reduced to writing which he signed. His version of the incident agreed with his sister's in all major aspects.

When Sealy moved out of the appellant's residence on 11 March, he left behind a letter apologizing for his part in the affray. On 1 August, five days before the trial was to begin, he executed a statement denying that the appellant had assaulted him. He suggested he was wounded when the appellant took the knife from his wife, and he (Sealy) tried to hit the knife with a trashcan lid, and as he swung the lid it hit the knife which cut his leg. The chest wound was unexplained as was the reason he was defending himself with a trashcan lid.

After the trial judge ruled that Sealy was unavailable, his statement of 26 February was admitted into evidence. Prior to this the prosecution recited the steps they had taken in an attempt to locate Sealy. These included checking at his last known address, contacting his last employer and close friends and neighbors in an attempt to ascertain his whereabouts. His sister, Camille Bridges, denied knowing his present location, although she would hear from him from time to time.[1] After hearing that Sealy had returned to New York and was living with relatives in Brooklyn, the apartment there was watched and attempts made to locate him. No relative would admit knowing where he was. The government had a subpoena ready should he be found. In our view the government demonstrated good-faith efforts to secure the presence of Sealy. *See United States v. Hubbard,* 18 M.J. 678 (A.C.M.R.1984).

For statements to be admissible under the residual hearsay exception the prosecution must show "particularized guarantees of trustworthiness" that have a suffi-

ciently high degree of reliability to justify their admission. We are aware of the close scrutiny such statements receive on appellate review, but we conclude that the statements of Mrs. Bridges and Arturo Sealy can pass the "constitutional and evidentiary muster" required by the Court of Military Appeals. *United States v. Hines, supra.* True, both statements under challenge were obtained by the police in private interviews, but as noted they were not interrogations in the common usage of the term, but reaffirmances of earlier statements given by the declarants under "firmly rooted" exceptions to the hearsay rule. Mrs. Bridges' statement to the desk sergeant and the police officer on the scene qualified as an "excited utterance" under Mil.R.Evid. 803(2), while Sealy's declaration was for the purpose of medical diagnosis and treatment. Mil.R.Evid. 803(4). These statements provide a "meaningful basis for assessing the candor of the declarant [and] the accuracy of the statement." The setting of subsequent interviews was non-coercive and the declarants were mature adults and not children whose statements might be influenced. Further, the statement of Mrs. Bridges was obtained within minutes after the affray and was consistent both within itself and other available evidence. Finally, the statements of both declarants were under oath and detailed as to what happened.

We also find that the statements of Bridges and Sealy were corroborated to a significant degree. First, Sealy's injuries were medically documented; second, the statement by the appellant to the police that he was the "one they were looking for" is an admission of culpability; third, the appellant's hiding of the knife displayed a consciousness of guilt consistent with both statements; and fourth, there was medical testimony that the injuries to Sealy were not consistent with an accidental swipe of a knife. Further, we find meaningful that while Mrs. Bridges announced she was "under [family] pressure"

1. We cannot but speculate that Sealy would have been "located" if it had been in the appellant's best interest to produce him.

not to report the incident, she nevertheless affirmed her earlier version of the facts.

Whether an out-of-court statement possesses the required "circumstantial guarantees of trustworthiness" is a question of law and the decision to admit such a statement lies within the sound discretion of the trial judge whose ruling will not be disturbed unless he clearly abuses that discretion. *United States v. Crayton*, 17 M.J. 932 (A.F.C.M.R.1984).

The facts surrounding the taking of the challenged out-of-court statements together with the corroborative evidence support the trial judge's finding that they possessed the necessary "indicia of reliability" and "circumstantial guarantees of trustworthiness" to justify their admission. *United States v. Hines, supra; United States v. Barror, supra; see generally United States v. Thornton*, 16 M.J. 1011 (A.C.M.R.1983). The findings of guilty and the sentence are

AFFIRMED.

Senior Judge FORAY and Judge HOLTE concur.