**UNITED STATES, Appellee,**

v.

**Ronald E. MARTINDALE, Cryptologic Technician (Collection) Second Class, U.S. Navy, Appellant.**

No. 54,536.
NMCM 85 0771R.

U.S. Court of Military Appeals.

June 12, 1990.

For Appellant: *Lieutenant Jeffrey S. Horwitz, JAGC, USNR* (argued).

For Appellee: *Lieutenant Commander Lawrence W. Muschamp, JAGC, USN* (argued); *Commander Thomas W. Osborne, JAGC, USN* (on brief); *Captain Wendell A. Kjos, JAGC, USN.*

*Opinion of the Court*

COX, Judge:

Appellant was tried by a general court-martial before members in March 1984. Contrary to his pleas, he was found guilty of two specifications of attempted sodomy, one specification of committing an indecent act with a minor, and thirteen specifications of sodomy, in violation of Articles 80, 134, and 125, Uniform Code of Military Justice, 10 USC §§ 880, 934, and 925, respectively. These offenses were committed by appellant upon his adopted son, S, who was under 16 years of age. Appellant was sentenced to be confined for 5 years, reduced to pay grade E–1, and dishonorably discharged from the United States Navy. The convening authority approved the findings and sentence. The Court of Military Review in an unpublished decision affirmed the findings and sentence on December 30, 1985.

In September 1986, this Court granted an issue raised in appellant's appeal asking us to determine if the "Court of Military Review err[ed] in holding that a transcript of

the oral unsworn statement of [S] was properly admitted into evidence." By summary disposition, 24 MJ 405 (1987), we set aside the decision below and remanded the record of trial for further consideration in accordance with our decision in *United States v. Barror*, 23 MJ 370 (CMA 1987).

On January 6, 1989, after further reflection on the issue, the Court of Military Review found:

> [After] again examin[ing] the record of trial, the clemency petitions, the assignment of error ... [we] have concluded that the findings and sentence are correct in law and fact and that no error materially prejudicial to the substantial rights of the appellant was committed.... Accordingly, the findings and sentence as approved on review below are affirmed.

Unpub.op. at 3.

This time we granted appellant's appeal to consider:

> WHETHER THE MILITARY JUDGE COMMITTED PREJUDICIAL ERROR BY ADMITTING INTO EVIDENCE A TRANSCRIPT OF AN ORAL UNSWORN STATEMENT OF ... [THE VICTIM, S].

We are called upon here to determine if the out-of-court statement of the alleged victim was admissible in evidence to corroborate appellant's confession. We conclude that the military judge did not err when he found admissible the transcript of the interview between the alleged victim and special agents of the Naval Investigative Service (NIS). In so holding, we conclude that the witness was "functionally unavailable" and, therefore, the decision to admit the evidence was justified. Mil.R. Evid. 804(a)(3), Manual for Courts–Martial, United States, 1969 (Revised edition). We are convinced that no aspect of this ruling denied appellant's right to confront the child accuser. *United States v. Quick*, 26 MJ 460 (CMA 1988). The witness was present at the suppression hearing, testi-

fied at a pretrial deposition, and, indeed, testified for his stepfather during the sentencing hearing. *See Coy v. Iowa*, 487 U.S. 1012, 108 S.Ct. 2798, 101 L.Ed.2d 857 (1988); *United States v. Owens*, 484 U.S. 554, 108 S.Ct. 838, 98 L.Ed.2d 951 (1988). In addition, we have determined that sufficient evidence was introduced during the suppression hearing concerning admissibility of the confession to allow the military judge to conclude that the child's statement to the NIS special agents had sufficient "guarantees of trustworthiness" to make it reliable. Mil.R.Evid. 804(b)(5). *See United States v. Hines*, 23 MJ 125 (CMA 1986).

This case was contested before members. The only evidence presented to them by the Government was appellant's confession and the contested statement. The latter, introduced through the testimony of NIS Special Agent Machin, was supported by evidence of a transcript of an interview between two NIS agents and the victim, appellant's adopted son. This statement was introduced through the testimony of NIS Special Agent Kellam. An explanation of the circumstances surrounding the confession and the subsequent interview of the child by the NIS agents is necessary for a complete understanding of the case.

Appellant was enrolled in Navy Over–Eaters Anonymous, a program which mirrored the "Twelve Steps" of Alcoholics Anonymous. "Step 5" of that program required each individual to admit his or her wrongs to another person. Because he was extremely distraught over his past sexual abuse of his stepson, which included fellatio and attempted anal intercourse, appellant decided to admit his actions to a counselor first and then to a Family Advocacy advisor. He ultimately confessed to NIS on January 13, 1984.[1] Five days later, appellant's wife was asked to bring her son to the NIS office to be interviewed.

Appellant filed a motion *in limine* asking the military judge to exclude the confession, claiming it lacked sufficient corrob-

---

1. Because of appellant's participation in this program, Part II of the dissent apparently expresses concern that appellant has been unfairly prosecuted. This issue is not before us. If Chief Judge Everett's instincts are correct, such is a matter for clemency consideration.

oration under Mil.R.Evid. 304(g). To substantiate appellant's admissions, the Government called the child as a witness. Although he was 12 years old, the child was emotionally and mentally disabled and could not read well. At the motion hearing, he testified that he could not remember what he told the NIS agents on January 18, and that he was unsure if what they said he told them was true. He also stated, in response to questioning from the military judge, "No, I don't want to tell you, 'cause I don't know." He repeated over and over that he did not remember the events or the interview. *See United States v. Owens, supra.*

Previously, the child had appeared at a deposition attended by trial and defense counsel, as well as appellant. There, he said that his statements to the NIS agents about his father's sexual abuse were true. However, just as he eventually did at the suppression hearing, he became very upset during the questioning and stated that he could no longer remember what he had said during the NIS interview.

Because he was either unable or unwilling to corroborate his stepfather's confession, the Government requested that the child be declared unavailable to testify and that, instead, a transcript of his interview with the NIS agents be admitted as an exception to the hearsay rule under Mil.R. Evid. 804(b)(5) or, if he was found available, Mil.R.Evid. 803(24). Defense counsel sought to exclude the transcript, arguing that the child was available and that the transcript lacked the "circumstantial guarantees of trustworthiness" required by either rule.

The NIS interview of the child lasted approximately 2 hours (from 3:30 to 5:05 p.m.). During that time, Agent Davis asked the child many questions, all of which were based upon appellant's written confession, which she had with her. The agents asked predominantly leading questions. During the first 30 minutes, they asked the child to sign a sworn statement, but upon learning that his reading comprehension was poor, they obtained a tape recorder. Agent Kellam testified that she had to turn the tape recorder off several times during the interview, because the child was "confused" or to allow Agent Davis, who was asking most of the questions, to collect her thoughts. Agent Kellam testified that she did not know that the child was emotionally or mentally disabled until after the interview.

The Government sought to introduce the interview as evidence to corroborate appellant's confession. In support of its contention that the interview satisfied the residual hearsay rule in that it was reliable, the Government called Dr. James Tom Greene, a clinical psychologist, who had talked with the child about 2 weeks after his interview with the NIS agents. Although Dr. Greene recommended against requiring the child to testify, Dr. Greene did say that, should it be necessary for him to testify, a number of steps could be taken to make the ordeal less traumatic. Dr. Greene also opined that the child had been sexually abused.

Additionally, Dr. Greene offered his opinion on the reliability of the child's statements to the NIS agents. The doctor testified that the child was very emotionally and psychologically disturbed; that he suffered from a learning disability which, in Dr. Greene's opinion, was both "neurologically based" and a result of the sexual abuse. Dr. Greene stated that he had performed a number of psychological tests on the child and conducted an interview, as stated above, 2 weeks after the boy was interrogated by NIS agents. During their discussion, the child freely told Dr. Greene that he had been made to perform fellatio on his father several times. While the child was not clear about the exact frequency of the acts, he was forthright in stating that they had occurred. He exhibited no ill will towards his father and was, in fact, very concerned that his father could be punished. Dr. Greene stated that, based on his interview with the child and his own experience with other child-sexual-abuse victims, he did not believe the child was fabricating the fact that the sexual abuse occurred. The doctor agreed that it

was possible the child was "latching on to" suggestions by the NIS agents as to exact times and frequency of the sexual abuse. He maintained, however, that there was no indication that the boy had fabricated the fact that the abuse occurred or that it had happened frequently, over a long period of time. All of Dr. Greene's testimony was offered *in camera* to support the admission of the confession and not on the merits. *See United States v. Arruza*, 26 MJ 234, 237 (CMA 1988).

Basing his decision on the child's claimed lack of memory and unwillingness to testify, as well as Dr. Greene's testimony regarding the traumatic effect testifying would have on the child, the military judge ruled that the boy was "unavailable" to testify as a witness at trial. He stated that, "taken as a whole, ... [the transcript] has substantial equivalent circumstantial guarantees of trustworthiness," under Mil. R.Evid. 803(24) or 804(b)(5), but he did not specify what those guarantees were. The military judge then ruled that appellant's confession could be admitted into evidence and that the transcript of the child's NIS interview could be admitted to corroborate appellant's admissions. The transcript eventually was offered during the Government's case-in-chief.

There are two separate concerns regarding the military judge's ruling. First, Mil. R.Evid. 304(g)(2) provides that "[t]he military judge alone shall determine when adequate evidence of corroboration has been received." Furthermore:

> [t]he independent evidence [used for corroboration] need raise only an inference of the truth of the essential facts admitted. The amount and type of evidence introduced as corroboration is a factor to be considered by the trier of fact in determining the weight, if any, to be given to the admission or confession.

Mil.R.Evid. 304(g)(1). We are satisfied from the evidence presented at the pretrial *in limine* hearing that the military judge did not err in finding the confession to be corroborated. *See* Mil.R.Evid. 104(a).

Notwithstanding the fact that the confession was admissible, the question remains as to whether the out-of-court declarations of the child were admissible on the merits.

Appellant does not contend that admission of the NIS interview with S violated his right to confront the witness under the Sixth Amendment to the Constitution of the United States.[2] Rather, he contends that the statement should not have been admitted because it lacked the "circumstantial guarantees of trustworthiness" required by Mil.R.Evid. 803(24) or 804(b)(5). Based upon the entire record presented to the military judge, *including appellant's confession*, we are satisfied that the hearsay testimony offered to corroborate appellant's admissions was reliable and admissible under Mil.R.Evid. 804(b)(5).

The record also supports the military judge's ruling that the child was "unavailable" within the meaning of Mil.R.Evid. 804(a)(2) and (3). The judge's ruling, however, was based solely on admissibility of the hearsay evidence and did not infringe upon or restrict appellant's right to confront his accusers. *United States v. Quick*, 26 MJ at 462. Accordingly, we find no error prejudicial to the rights of appellant.

The decision of the United States Navy–Marine Corps Court of Military Review is affirmed.

Judge SULLIVAN concurs.

EVERETT, Chief Judge (dissenting):

The issue before us is admissibility of the transcript of an interview by Naval Investigative Service (NIS) agents of Martindale's adopted son. The military judge and the majority of this Court are of the opinion that the transcript's admissibility was es-

2. In light of *Coy v. Iowa,* 487 U.S. 1012, 108 S.Ct. 2798, 101 L.Ed.2d 857 (1988), and *Craig v. Maryland,* —— U.S. ——, 110 S.Ct. 834, 107 L.Ed.2d 830 (1990), the Bench and Bar should be forewarned that the correct procedure would have been to put the child on the witness stand *in front of the members* in order that they might weigh the import of the "unavailability" or the believability of the out-of-court statement.

tablished under Mil.R.Evid. 804(b)(5), Manual for Courts–Martial, United States, 1969 (Revised edition). I disagree.

## I

The legislative history of the residual hearsay exception indicates that Congress "intended" the exception to "be used *very rarely, and only in exceptional circumstances.*" S.Rep. No. 1277, 93d Cong., 2d Sess. 20, *reprinted in* 1974 *U.S.Code Cong. & Admin.News* 7051, 7066 (emphasis added). The circumstance that the transcript was corroborated by appellant's own confession is not itself "exceptional." *Cf. United States v. Barror,* 23 MJ 370, 372 (CMA 1987); *United States v. Hines,* 23 MJ 125, 137–38 (CMA 1986); *United States v. Bailey,* 581 F.2d 341, 349 (3d Cir.1978).

Nor is corroboration determinative of the reliability of the hearsay statement. In *Hines,* we cautioned: "Corroboration alone, however, *without other factors indicating reliability,* would generally not suffice to render [hearsay] statements reliable." 23 MJ at 138 n. 17 (emphasis added; citation omitted). In other words, if the *ex parte* statement is lacking in "circumstantial guarantees of" reliability, the fact that the statement is corroborated by an accused's confession is not enough to satisfy the demands of Mil.R.Evid. 804(b)(5). *See United States v. Barror* and *United States v. Bailey,* both *supra.*

The majority implies as much when it bases its conclusion "upon the entire record presented to the military judge, including appellant's confession ..." 30 MJ at 175 (emphasis omitted). The majority does not identify what in the "entire record" it finds so convincing as to the statement's reliability—but I find the circumstances surrounding the statement to be quite the contrary.

The son was 12 years old; emotionally and mentally disabled; and functionally illiterate. He was under the impression that the agents would not allow his mother to be present with him during the interview; indeed, when his mother asked to remain with her son during the interview, the agents persuaded her not to do so. The record is devoid of any legitimate reason for interviewing an illiterate, emotionally disturbed boy under such conditions.

The interview lasted 2 hours. During the interview, the agents asked the son several questions: They were based on appellant's confession; they were predominantly leading; the son obviously was uncomfortable with them; and almost all were answered by "yes," "no," or "I don't know." Against the backdrop of this style of interrogation (and the questionable reliability of any statement that results), consider two other almost incredible factors: It was not until 30 minutes into the interview, when the agents asked the son to sign a sworn statement, that they learned that he was functionally illiterate; and they did not realize that he was mentally disabled until after the interview was over! Under these circumstances, the risk that the product of this interview is not reliable is so high that it boggles the mind.

To aggravate matters even more (if that is possible), the transcript admitted into evidence is derived from a recorded interview in which, as the NIS agents candidly admitted, there were several *intentionally unrecorded* gaps (shades of a bygone era). We do not know what was said or done during those intervals—we are told by the agents, however, that the recorder was turned off at least five times either *because the son was confused or to permit the questioner to collect her thoughts!* Martindale, of course, had no opportunity to question his son during the interview.

Notwithstanding, the military judge found that, despite the conditions of the interview, the statement evinced "circumstantial guarantees of trustworthiness" "as a whole"; but he failed to explain what those guarantees were or what parts comprised the "whole." Regrettably, the majority opinion suffers from the same omission.

It is possible that the majority relies on the testimony of Dr. Greene "that there was no indication that the boy had fabricated the fact that the abuse occurred or that

it had happened frequently, over a long period of time." The majority does concede, though, that the doctor did acknowledge "that it was possible the child was 'latching on to' suggestions by the NIS agents as to exact times and frequency of the sexual abuse." 30 MJ at 175. Why is it possible that the child was led in some of his answers but not in others?

The doctor testified that he had not seen any indication that the fact or duration of abuse had been fabricated by the alleged victim. The question that immediately arises is whether he had any affirmative indication that this information had *not* been fabricated. In light of the expert's concession that the child may have " 'latch[ed] on to' suggestions by the NIS agents as to" some of the details of his answers and in light of the previously noted comedy of errors surrounding the interrogation, this seems to be a fair question. Strikingly, it is unanswered by the record.

Perhaps even more importantly, the doctor's testimony as to "fabrication" really is testimony as to the credibility of the alleged victim. As was pointed out by Judge Cox in the lead opinion in *United States v. Arruza*, 26 MJ 234, 237 (CMA 1988), *cert. denied*, 489 U.S. 1011, 109 S.Ct. 1120, 103 L.Ed.2d 183 (1989):

> This Court has consistently held that child-abuse experts are not permitted to opine as to the credibility or believability of victims or other witnesses. *United States v. Petersen*, 24 M.J. 283 (C.M.A. 1987); *United States v. Deland*, 22 M.J. 70 (C.M.A.), *cert. denied*, 479 U.S. 856, 107 S.Ct. 196, 93 L.Ed.2d 128 (1986); *United States v. Cameron*, 21 M.J. 59 (C.M.A.1985). This holding is consistent with the decisions of Federal Circuit courts. *See United States v. Azure*, 801 F.2d 336 (8th Cir.1986).

Although in this case the expert's opinion was presented in the process of determining whether the transcript should be admitted into evidence, the fact remains that it was relied on by the military judge and is now relied on by the majority—a reliance which, in my opinion, violates the rule es-

tablished in *Arruza*. In any event, the extraordinarily high risk of *un*reliability posed by the circumstances surrounding the questioning quite adequately offsets any assurance that might be drawn from Dr. Greene's testimony.

As the majority opinion notes, the son did testify at the sentencing phase of the trial. However, what occurs after findings of guilt is irrelevant in deciding whether the military judge erred in admitting the transcript into evidence in determining guilt or innocence. Martindale should not be penalized in any way for his decision not to call or confront his son during the trial of the case or to ask during the hearing on the motion *in limine* whether the transcript contained all of the son's responses during his interview by the two NIS agents. In view of the mental state and illiteracy of this 12–year–old, any failures to obtain complete testimony from him should be held against the Government, rather than against Martindale.

In sum, I conclude that this evidence did not adequately comply with Mil.R.Evid. 804(b)(5), and its reception constituted prejudicial error.

## II

Finally, I am concerned because the entire prosecution stems from what seems to me to be a violation of a naval directive designed to protect servicemembers who, like Martindale, have voluntarily sought counseling for a problem. Secretary of the Navy Instruction 1752.3 provides in paragraph 7a for "voluntary self-referral" and states that "disclosure of offenses to designated FAP [Family Advocacy Program] representatives for the express purpose of obtaining treatment or rehabilitation *may not be used against the member in any disciplinary action under the UCMJ* or as the basis for characterizing a discharge." (Emphasis added.)

Martindale had referred himself to the Family Advocacy Program; and I conclude that this referral—even though the result of the conversations with a supervisor—fell

within the category of "voluntary self-referral." Representatives of the Family Advocacy Program, in turn, advised him to disclose his offenses to the Naval Investigative Service. This advice on their part does not seem to comply with the intent of the directive.

When Martindale reported to the Naval Investigative Service, he was given a so-called "cleansing warning," which advised him that "[a]ny statement you have previously made such as to members of your command cannot be used against you." Under the circumstances here, I am convinced that this warning was insufficient to overcome the pervasive effect of the previous advice given to Martindale by his Family Advocacy Program counselor, who suggested that talking to NIS agents about his offenses was necessary as part of his therapy.

It goes without saying that I have no sympathy for the crimes of which Martindale was convicted. However, I am convinced of the importance of Family Advocacy Programs; and it seems to me—and apparently also to the Secretary of the Navy—that voluntary self-referral is an important part of such programs. Indeed, voluntary self-referral and prohibitions against disclosure have been incorporated into various other important programs, such as those dealing with alcohol and substance abuse and AIDS.

I conclude that a prohibition against the use of information disclosed "for the express purpose of obtaining treatment or rehabilitation" is a rational—and probably vital—component of voluntary self-referral. This being so, I cannot condone the evasion of this privilege which has occurred in the present case and which prejudiced appellant.

III

Since Martindale was convicted on inadmissible—and unreliable—evidence, I would reverse the decision below.