**UNITED STATES**

v.

**Sergeant Ramiro T. ORTIZ, Jr., FR558–39–9429 United States Air Force.**

**ACM 28880.**

U.S. Air Force Court of Military Review.

Sentence Adjudged 3 Nov. 1989.

Decided 6 March 1992.

Appellate Counsel for the Appellant: Colonel Jeffrey R. Owens and Major Ronald G. Morgan.

Appellate Counsel for the United States: Colonel William R. Dugan, Jr., Lieutenant Colonel Brenda J. Hollis, and Captain Thomas E. Wand.

Before HODGSON, McLAUTHLIN and JAMES, Appellate Military Judges.

## OPINION OF THE COURT

HODGSON, Senior Judge:

This case involves a scenario that is all too common in spousal abuse: The injured party made an initial complaint but later refused to testify against the abusing spouse.

### FACTS

Master Sergeant Robert Gaydos and his wife lived next door to the appellant and his family on Incirlik Air Base, Turkey. At about 1900, 9 August 1989, Mrs. Ortiz (appellant's wife) appeared at Sergeant Gaydos' door nude, hysterical, and pleading for him to call the security police, which he did. Mrs. Gaydos gave her a bathrobe and was standing nearby when the appellant came

to the Gaydos' door with a towel and told his wife "to go back over to the house."

Security police Sergeant Kimberly Miller was on duty that evening when she responded to a report of a "domestic incident" in the housing area. She went to the Gaydos' quarters where she met Mrs. Ortiz who was "extremely upset." Sergeant Miller noticed a scratch and blood on Mrs. Ortiz's right temple and blood on the right hand corner of her mouth. Miller took Mrs. Ortiz home, but when she opened the door and saw her husband there, Mrs. Ortiz "froze in the doorway." When this happened the appellant said, "It's okay, you can come in, I'm not going to hit you." Mrs. Ortiz replied, "No, you are going to kill me."

Since Mrs. Ortiz was visibly shaken and having difficulty breathing, Miller took her to the hospital. Enroute, she noticed bruises and scratches on Mrs. Ortiz's left leg and upper left back shoulder. In a brief questioning by Miller, Mrs. Ortiz said her husband had hit her "many times" on the head, stomach, right rib cage and lower back. Mrs. Ortiz also stated that "she didn't want to take it anymore and wanted ... help." Throughout the interview she was upset and crying. Later, she told an Office of Special Investigations (OSI) agent that the appellant came home about 1915, referred to some letters he had found, and started hitting her and throwing her to the floor repeatedly.

When Mrs. Ortiz arrived at the hospital, she was examined by Captain (Dr.) John Cocuzzi. Dr. Cocuzzi observed a bruise on her forehead and left shoulder and thigh, a swollen lower lip and left ear, a tender stomach, and discoloration on her shoulder and leg. Mrs. Ortiz told Cocuzzi that her husband "beat her with his fists." Dr. Cocuzzi admitted Mrs. Ortiz to the hospital for observation and because "she was in obvious danger should she go home."

On 11 August, Staff Sergeant Michael Fife, a security police investigator, interviewed Mrs. Ortiz while she was in the hospital. She told him that her husband came home on 9 August and began questioning her about some letters he had found. When she tried to explain, he became angry and began beating, kicking and choking her. Mrs. Ortiz willingly spoke about the incident and agreed to provide a written statement after she was released from the hospital. The following Monday, 14 August, Mrs. Ortiz returned to Security Police headquarters and gave Fife a handwritten statement relating what had taken place. This statement was later typed on a standard witness form, and in the presence of witnesses, signed by Mrs. Ortiz under oath.

Subsequently, Mrs. Ortiz refused to appear at the pretrial investigation stating "she had no intention of testifying." She also refused to testify at trial saying "to do so would cause family problems." However, she did testify on her husband's behalf during the sentencing phase of the trial. During her testimony she admitted that her husband had beaten her badly about the head and face, but stated she had "forgiven" him.

Initially, the appellant entered a not guilty plea to aggravated assault and dereliction of duty by negligently failing to safeguard his rifle. However, after the trial judge ruled that the out-of-court statements of his wife were admissible, he entered a conditional guilty plea to the lesser included offense of assault and battery and an unconditional guilty plea to the dereliction of duty allegation. The issue preserved by the conditional guilty plea would have disposed of the assault and battery allegation, and it was properly accepted. R.C.M. 910(a)(2); *United States v. Phillips*, 32 M.J. 955 (A.F.C.M.R.1991). Appellant was found guilty in accordance with his pleas and sentenced to a bad-conduct discharge and reduction to E–2. The convening authority approved the sentence as adjudged.

## ADMISSIBILITY OF MRS. ORTIZ'S OUT–OF COURT STATEMENTS

The trial judge determined that the statements Mrs. Ortiz made on 9, 11, and 14 August were admissible as present sense impressions, excited utterances, statements for purposes of medical diagnosis or treat-

ment, and under the residual hearsay exception. *See* Mil.R.Evid. 803(1), (2), (4), and (24). Under Mil.R.Evid. 803, the availability of the declarant is immaterial. *United States v. Dean*, 31 M.J. 196 (C.M.A.1990).

To properly assess the trial judge's ruling admitting Mrs. Ortiz's statements, it is necessary to examine the setting in which each was made. For a statement to qualify as an excited utterance, the declarant must (1) have experienced a startling event or condition and (2) reacted while under the stress and excitement of the event and not from reflection and fabrication. *See* Mil.R.Evid. 803(2); *United States v. Pearson*, 33 M.J. 913 (A.F.C.M.R. 1991). Here, there is no question that Mrs. Ortiz had experienced a "startling event" when she appeared on the Gaydos doorstep naked and hysterical. Thus, any statement she made to the security policewoman who arrived a few minutes later would appear to qualify as an "excited utterance." The security policewoman who responded to the call described Mrs. Ortiz as "extremely upset" with injuries to her head and face. Further, her reply to the appellant that, "No, you are going to kill me," also declares her fear of her husband and is admissible under Mil.R.Evid. 803(3) to show a then-existing mental, emotional, or physical condition. *See United States v. Elmore*, 33 M.J. 387 (C.M.A.1991). A strong case can be made for the admission of Mrs. Ortiz's statement to Sergeant Miller identifying her husband as the attacker as a fresh complaint under Mil.R.Evid. 803(1) and (3). *See* Drafter's Analysis to Rule 803(1) and (3), Salzburg, Schinasi, and Schlueter, *Military Rules of Evidence Manual* 640, 641 (2nd ed.1986).

Appellate defense counsel argue that the trial judge erred in permitting Dr. Cocuzzi to testify as to whom Mrs. Ortiz identified as her assailant. They claim there is no medical reason for this identification. We disagree. In *United States v. Lingle*, 27 M.J. 704 (A.F.C.M.R.1988), *pet. denied*, 28 M.J. 455 (C.M.A.1989), we allowed admission of perpetrator identification in a child abuse case. The logic that prompted the admission of such evidence there is also evident here. If Mrs. Ortiz's attacker was a total stranger or not a family member, she could safely return home to recuperate. Thus, there is a valid medical reason to know the identity of the assailant. As Dr. Cocuzzi so correctly stated:

> Well, here's a woman who's been beaten up and she tells me that her husband did it, I'm not going to send a woman back or anybody back into that environment. That's one reason, plus, I needed to get our Mental Health Staff involved.

Dr. Cocuzzi went on to state that someone needed to "attend to her emotional needs." Therefore, he notified the Family Advocacy Officer that evening. The protocol in a situation such as this is to contact a psychiatrist. If Dr. Cocuzzi had remained unaware of the source of the injuries, he would have been unlikely to suggest that Mrs. Ortiz get the appropriate psychological counseling. The identity of an assailant is as important to the treatment of a battered wife as it is to an abused child. Both need treatment for the physical and emotional trauma. The failure to identify the perpetrator can hinder proper medical treatment and permit recurrence of the abuse. *Accord United States v. Dean, supra.*

We turn now to Mrs. Ortiz's written statement of 14 August to Sergeant Fife. The trial judge concluded that this statement fell within the residual hearsay exceptions of Mil.R.Evid. 803(24) and 804(b)(5). The confrontation issue stressed by the Court of Military Appeals so vigorously in *United States v. Hines*, 23 M.J. 125 (C.M.A.1986) and *United States v. Barror*, 23 M.J. 370 (C.M.A.1986) is not present here because Mrs. Ortiz testified at the presentencing phase of the trial on her husband's behalf. Although she claimed no valid basis for asserting a privilege, she refused to testify for the Government. Thus, she was available for examination by the appellant should he have wished to call her as a witness. *See generally United States v. Rousseau*, 25 M.J. 188 (C.M.A. 1987) (summary dispositions); *see also*

*United States v. Bridges,* 24 M.J. 915 (A.F.C.M.R.1987).

█ Therefore, the primary issue regarding her pretrial statement is its trustworthiness, not confrontation of Mrs. Ortiz by the appellant. Because her statement was obtained by police investigators, the prosecution must establish that the information contained in the statements was not the product of subtle biases introduced by the interviewer or the questioning technique he employed. *United States v. Hines, supra,* and *United States v. Barror, supra.*

█ The dynamics surrounding the taking of the out-of-court statement are significant in assessing its trustworthiness. Mrs. Ortiz was initially interviewed by Fife while she was in the hospital. There was no interrogation as that term is commonly used. After she told the interviewer what had happened, she was asked to give a written statement once she got out of the hospital. Upon her release, Mrs. Ortiz returned to the Security Police headquarters and gave Fife a hand-written statement relating the circumstances of the assault. She was not questioned to any degree about the statement because Fife did not want to "upset" her.

Like all hearsay exceptions, Mil.R.Evid. 803(24) and 804(b)(5) are rules of reliability, truthfulness, trustworthiness and accuracy. *United States v. Jones,* 30 M.J. 127, 131 (Judge Cox concurring) (C.M.A.1990). The "particularized guarantees of trustworthiness" needed for the admission of an out-of-court statement must be drawn from the totality of the circumstances that surround the making of the statement. *Idaho v. Wright,* 497 U.S. 805, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990). Our brethren on the Army Court of Military Review observed:

> In other words, if the declarant's truthfulness is so clear from the surrounding circumstances that the test of cross-examination would be of marginal utility, then the hearsay rule does not bar admission of the statement at trial.

*United States v. Palacios,* 32 M.J. 1047, 1050 (A.C.M.R.1991) quoting *Wright,* 110 S.Ct. at 3149 and 5 J. Wigmore, *Evidence* § 1420, p. 251 (1966).

We find "particularized guarantees of trustworthiness" in Mrs. Ortiz's written statement of 14 August. First, it was a reaffirmation of earlier statements made by her under "firmly rooted" exceptions to the hearsay rule. Her assertions to the just arrived police officers that her husband had beaten her and her fear that he might kill her qualified as an "excited utterance" under Rule 803(2) and a "present sense impression" under Rule 803(4). Further, her declarations to Dr. Cocuzzi were made for the purpose of medical diagnosis and treatment and are clearly admissible under Rule 803(4). Second, the written statement initially given by Mrs. Ortiz to Sergeant Fife was in her own handwriting and prepared by her away from any interrogation setting. That negates any argument that she was pressured into making it and merely signed what was placed before her. Also, the statement was in great detail and under oath. Finally, the intent and purpose of Rules 803(24) and 804(b)(5) are to insure that the interests of justice will be best served by the admission of the statement into evidence. The statement was offered as evidence on a material fact and probative on the point for which it was offered. Spouse abuse usually occurs in private and away from the public eye.

█ It is in the interest of justice to admit out-of-court statements from abused spouses when such statements have the necessary "indicia of reliability" and "circumstantial guarantees of trustworthiness" to justify their admission. The decision to admit such statements lies within the sound discretion of the trial judge, and his ruling will not be disturbed unless he clearly abuses that discretion. We find no abuse of discretion here. *United States v. Crayton,* 17 M.J. 932 (A.F.C.M.R.1984); *United States v. Bridges, supra.*

█ However, assuming that Mrs. Ortiz's statements to Sergeant Fife were inadmissible in the prosecution of the appellant, the erroneous admission of those statements was harmless error beyond a reason-

able doubt where there was sufficient other evidence to support a finding of guilty in the absence of a conditional guilty plea. *United States v. Giambra,* 33 M.J. 331 (C.M.A.1991); *United States v. Ferdinand,* 29 M.J. 164 (C.M.A.1989); *United States v. Moreno,* 31 M.J. 935 (A.C.M.R.1990).

The remaining assigned errors are resolved against the appellant. *Accord United States v. Godreau,* 31 M.J. 809 (A.F.C.M.R.1990); *United States v. Kabelka,* 30 M.J. 1136 (A.F.C.M.R.1990); *see* R.C.M. 305(k). For the reasons stated, the findings of guilty and the sentence are

AFFIRMED.

Judges McLAUTHLIN and JAMES concur.